114 So.2d 879 (1959)
Frank V. DRAUBE
v.
Roland J. RIETH d/b/a Rieth Construction Company and American Employers Insurance Company.
No. 21045.
Court of Appeal of Louisiana, Orleans.
October 19, 1959.
*880 Mollere, Zaccaria & Gracianette, New Orleans, for plaintiff-appellee.
Baldwin, Haspel, Molony, Rainold & Meyer, New Orleans, for defendants-appellants.
JANVIER, Judge.
This suit grows out of the construction of a residence for the plaintiff, Frank V. Draube, by one of the defendants, Roland J. Rieth, a contractor who conducts his business as Rieth Construction Company. The other defendant, American Employers Insurance Company, was surety on the performance bond of the contractor.
The contract contemplated the construction of a residence, the consideration being $19,995.
There are almost no disputes over the facts which gave rise to the controversy, and defendants have appealed suspensively from a judgment in favor of plaintiff and against them solidarily in the sum of $478, the estimated cost of repairing certain defects in areas of the flooring of the building, which defects made their appearance somewhere between two and four months after the building had been completed and accepted by the owner. The defects lay in the fact that the board sub-floor on which the vinyl floor tiles were laid in the areas in question buckled to such an extent that each board edge pushed up the tiles, with the result that that edge showed plainly, and across each such area there were lines showing where these edges had pushed up the tiles.
When these defects made their appearance the contractor, at his own cost, reconstructed the floor leaving out a felt material which had been placed between the wood sub-floor and the tiles. After a few months, the same defects again made their appearance, and the owner obtained from another contractor an estimate which contemplated the elimination of these defects, and it is on that estimate that this suit is based.
That there were defects after the original construction and after the reconstruction of the floors is conceded by defendants who seek to avoid liability for the estimated cost of repairing the defects by contending that the material which the contractor furnished and the work which was performed were strictly in accordance with the plans and specifications which were furnished by the owner, the contention being that, since the work was completed in accordance with the plans and specifications and was accepted by the owner, there can be no liability in defendants unless the owner can bear the burden of showing that there was some defect in the material furnished or that there was improper workmanship. The fact that, after the first defect made its appearance, the contractor undertook at his own expense to eliminate *881 these defects is pointed to by the District Judge as a recognition by the contractor of his liability.
At the time of the trial below the second repair job had not been done, and, so far as we can ascertain, the floor is still in the defective condition in which it was after the contractor had relaid the tiles after the first discovery of their defective condition.
In the contract which was on a standard form of the American Institute of Architects were the following provisions:
"Article 1. Scope of the Work The Contractor shall furnish all of the materials and perform all of the work shown on the Drawings and described in the Specifications entitled House for Frank V. Draube, 101 West Magnolia Boulevard, prepared by Louis Landry * * * and shall do everything required by this Agreement, the General Conditions of the Contract, the Specifications and the Drawings."
* * * * * *
"Article 6. The Contract Documents The General Conditions of the Contract, the Specifications and the Drawings, together with this Agreement, form the Contract, and they are as fully a part of the Contract as if hereto attached or herein repeated. The following is an enumeration of the Specifications and Drawings: * *"
The specifications concerning the floors required that there be laid a concrete base four inches thick; that on top of that concrete base there be laid a wood floor of No. 2 common pine, seven-eighths inches thick and three and one-quarter inches wide and machine sanded only.
The contractor stated that he had followed these specifications to the letter and there is not one word in the record to contradict this. In fact, the owner and his wife and all others who testified on this subject conceded that they knew of nothing to indicate that there was anything wrong with the materials furnished nor with the workmanship. In the concrete base the contractor embedded the necessary wood sleepers to which the wood sub-flooring was affixed and over the wood sub-floor which had been sanded he laid the 15-pound felt, and on top of that the tiles as required. Rieth, the contractor, Elfer, the expert placed on the stand by plaintiff, and Miller, the subcontractor who laid the tiles, all stated that in their opinion the trouble resulted from the fact that there was used the wood sub-floor between the concrete and the felt on which the tiles were laid and that, in their opinion and in the opinion of the manufacturer of the tiles, this was not standard nor good practice. They gave similar reasons for these opinions, the contractor and the expert produced by plaintiff both stating that the reason for this condition is that, when a wood sub-floor is used between the concrete base and the tiles, this sub-floor is so sealed off that it gets no air, with the result that the slightest moisture in the concrete cannot escape, and with the ultimate result that the boards of the sub-floor swell and buckle, the edges being forced up to show through the tiles.
The record leaves in our minds not the slightest doubt that this was the cause of the trouble and that good practice does not permit the use of such a sub-floor. More important still is our certainty that the sub-floor which was required by the specifications was installed exactly in accordance with those specifications.
On whom then should liability for this situation be placed? The plans and specifications were provided by the owner. They had been prepared by a Mr. Palmisano, apparently, though not definitely, shown to be, an architect but who was not called by plaintiff as a witness. The plaintiff's wife admittedly represented her husband in most of the negotiations with the contractor and in the discussions with Mr. Palmisano, who prepared the plans. Rieth, the contractor-defendant, states that when *882 he saw the specifications he felt that the use of a sub-floor was bad practice, and that he asked Mrs. Draube for permission to eliminate that sub-floor and to affix the tiles directly to the concrete since he had had no experience in placing such a wood sub-floor between a concrete base and tiles. He states that Mrs. Draube refused to give him that permission and insisted that the specifications be followed. Mrs. Draube denies that there was any such conversation, but she states that the contractor was told that the specifications should be followed. It appears that the contract and plans were prepared by Louis Landry who is referred to by Mr. Draube as "a boy by the name of Landry." Mr. Draube says he does not know whether Mr. Landry was an architect. The specifications were prepared by a Mr. Palmisano. Mr. Draube says that when the specifications were brought to them he and his wife made some changes in them, thereby indicating what they required. When questioned as to the experience of Mr. Palmisano, Mr. Draube said that he was a builder and contractor and had been in the business "10 or 12 years, at that time." Mrs. Draube said that Palmisano "has been in the building business probably as long as Mr. Rieth has."
If we felt that there was no doubt as to whether the defendant contractor had asked for permission to eliminate the wood floor and that this permission had been denied him, we would have no hesitation in saying that, since the owner insisted on following faulty plans and since the building was completed and accepted, there would be no liability in the defendants unless the plaintiff could show that there was faulty workmanship or defective materials. However, since there may be some doubt as to whether Mrs. Draube was warned by Rieth about the specifications, we prefer to base our conclusion on other facts which we feel certain relieve the contractor and his surety from liability.
It is well settled that where plans and specifications are proper and, if followed, will produce the desired result, if defects later appear there is no liability in the contractor who follows those plans and specifications unless it can be shown that the material furnished by the contractor was defective or that the workmanship was faulty. It is also settled that, where the contractor has expert knowledge on the subject and has reason to feel that there is a defect in the specifications, it is his duty to examine them and to warn the owner of his fears. These questions and other related questions are exhaustively discussed by our Supreme Court in Brasher v. City of Alexandria, 215 La. 887, 41 So.2d 819.
Here it is shown, as we have stated, that the architect or experienced contractor, Palmisano, who formulated the plans and specifications, had had at least as much experience in such matters as the contractor had had, and we do not see that there was any duty in the contractor to warn the owner that there might be defects in those specifications. If the defects had been such as to prevent the completion of the work, then it unquestionably would have been the duty of the contractor to notice them and to advise of his unwillingness to go ahead, or to insist that if he should attempt to follow the defective plans he could not be held liable.
In the Brasher case the Supreme Court held that where a contractor, because of defective plans or specifications, is unable to complete the work, he is not relieved from liability for the cost of such alterations or changes or additions as may be required, since it was his duty to examine the specifications in advance and to determine whether the work could be completed. But the Court obviously concluded that, where the work can be and is completed in accordance with the plans and specifications, there is no liability in the contractor for defects which later appear except upon proof by the owner that there was defective material or improper workmanship.
The Supreme Court quoted, 215 La. on page 922, 41 So.2d on page 831, as follows *883 from 6 Williston on Contracts, Revised Edition, section 1966, pages 5515-5518:
"Though the builder may be liable if he fails, by reason of defective plans furnished him, to complete work which he has undertaken, yet if he can and does complete it according to the plans he is not liable for subsequent inferiority, injury, or destruction of the work, due to the defective character of the plans."
As supporting that view, the Supreme Court also cited Berick, Warranties in Building Contracts, 6 U.Cin.L.Rev. 121; Note 21, Minn.L.Rev. 70.
In other words, although in the Brasher case the Court held the contractor liable for not discovering defects in or omissions from the specifications, it reached that conclusion because the work had not been completed. The Court referred to Articles 2758 and 2762 of our LSA-Civil Code and clearly said that if, "previous to its being delivered to the owner," work which has been undertaken under contract is destroyed, or cannot be completed, because of defects in the plans or specifications, or for any other reason, the resulting loss or the cost of correction must be borne by the "undertaker," since, before undertaking the work, he should have checked and analyzed the plans and specifications and made certain that the work could be completed in accordance therewith, but that if the work can be and is completed in accordance with the plans and specifications and the owner accepts the completed work, then there is no liability in the "undertaker" if defects later appear unless the owner on whom the burden rests can show either defective material or faulty workmanship.
It is true that in Article 2762 there is no reference to defective materials, reference to such materials being contained only in Article 2758, but we have no doubt that, as a result of the effect of both articles 2758 and 2762, if, after completion of the work and acceptance by the owner, defects appear, the undertaker is liable only if the owner can show defective workmanship or faulty material.
In Delee v. Hatcher, 19 La.Ann. 98, the Supreme Court, referring to Article 2733 of the LSA-Civil Code, which is now Article 2762, held that:
"The badness of the workmanship comprehends not only a defect of construction, but, likewise, the using of bad materials, * * *."
Our conclusion is that, since the work could be and in fact was completed in accordance with specifications furnished by the owner and the defects did not make their appearance until after completion in accordance with those specifications, and, since the owner has not shown either defective materials or faulty workmanship, there is no liability in the defendants, unless it be as a result of the fact that the contractor voluntarily attempted to repair the defects at his own expense and thus evidenced an admission of fault on his part.
When we come to consider this contention, we bear in mind that the contractor had constructed a residence for a contract price of practically $20,000 and a few months after completion there had appeared defects which he thought could be eliminated at a cost of less than $500. He felt that the trouble had resulted from improper specifications, but that possibly by doing over the floor and eliminating the felt, the result might prove satisfactory. He had no doubt made a reasonable profit on the contract and he felt that as evidence of good faith on his part and in order to create or maintain the good will of the owner it would be best for him to expend this comparatively small amount in attempting to remedy the defect. We do not look upon this action as evidence of admission of fault. If so, then no contractor would be safe after the acceptance of his work in doing anything whatever to eliminate *884 any minor defects which might soon thereafter appear.
Our conclusion is that, since there was initially no liability in the contractor, the fact that he attempted to eliminate the defects did not create liability which had not otherwise existed.
The judgment appealed from is annulled, avoided and reversed and the suit of plaintiff is dismissed at his cost.
Reversed.