Arturo H. Géigel, Jr., Plaintiff and Appellant, *v.* Dr. M. A. Mariani et ux., Defendants and Appellees.

No. 12607.   Decided March 16, 1962.

44

*Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco,* and *Hernán G. Pesquera* for appellant.  *F. Fernández Cuyar* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Arturo H. Géigel, an engineer contractor, built a house for Dr. Mariani.  On the date of delivery Dr. Mariani owed the contractor $4,413.56.  The latter filed an action to recover said amount.  Dr. Mariani admits the debt but counterclaimed for $4,602.74.  He alleges it is the sum necessary to correct a number of deficiencies of the property object of the contract.  After the trial the court granted the counterclaim for $4,425.74.  Therefore, it ordered the plaintiff to pay the defendant $12.18.  In addition to the costs, it ordered plaintiff to pay $300 for attorney's fees.

The contractor appeals to this Court.  He admits the deficiencies in the construction which amount to $410.74, but challenges the sum of $4,015 that the trial court determined was the cost of correcting the leaks and defects of the roof. He maintains that the defects which the trial court determined existed in the roof of the house were not defects of construction.  His appeal is based on that contention.

The liability of the contractor for defects in the construction stems from § 1483 of the Civil Code, 31 L.P.R.A. § 4124.[1]  It provides as follows:

---

[1] It corresponds to § 1591 of the Spanish Code.  And is similar to § 1792 of the French Code.  It provides thus:

"The contractor of a building which may have been destroyed by reason of defects in the construction shall be liable for the losses and damages if said building should collapse within ten years, to be counted from the completion of the construction; and during the same time the same liability shall be incurred by the architect who may have directed the work if the collapse is due to defects in the ground or in the direction.

"If the cause should be the noncompliance of the contractor with the conditions of the contract, the action for indemnity may be brought within fifteen years."

The ancestry of this section of our Code is traced back to Gratian and Theodosius, who established by a constitution that the constructor of public buildings and his heirs were liable for defects of construction during fifteen years. See TRAVIESAS, *Contrato de Arrendamiento*, VI *Revista Derecho Privado* 34, 45 (1919). "Although the Roman law refers to public works, it was necessary to enlarge all of them as a whole because the principle on which they are based may be present in all of them." GUTIÉRREZ FERNÁNDEZ, IV *Estudios Fundamentales Sobre el Derecho Civil Español* 455 (1st ed. 1869). Spain has similar provisions without being limited to public buildings, in the *Tercera Partida*, Title XXXII, Law 21 and in the *Quinta Partida*, Title VIII, Law 16. Thus, since ancient times one who builds is responsible for the results of a bad construction.

In our times we find analogous provisions in the Civil Codes of Germany, § 638; Argentina, § 1648; Bolivia, § 1195; Brazil, § 1247; Colombia, § 2060; Cuba, § 1591; Chile, § 2003; Ecuador, § 1994; El Salvador, § 1791; Spain, § 1591; Philippines, § 1591 (1719, Civil Code of 1950); Italy, § 1669; Louisiana, § 2762; Mexico, § 2634; Panamá, § 1343; Perú, § 1556; Switzerland, § 365; Venezuela, § 1695.

---

"If the building constructed by lump sum is destroyed in whole or in part due either to a vice of construction or to a vice of soil, the architect and the contractor shall be liable for a period of ten years."

Thus we see that it has been a matter of concern of legislators since the times of Rome to make the builder responsible for defects in his works.

■ The contractor's liability is not limited to the case where the defects of construction cause the total ruin of the thing built. He is also liable for partial ruin. The Supreme Court of the Philippines considers this question in *Limjap* v. *J. Machuca & Co.*, 38 Phil. Rep. 451, 454 (1918), when it states:

"This argument is based on a literal construction of the words *se arruinase* [should collapse] which appear in article 1591 [equal to our § 1483]. We can not agree with the appellant. It may often happen that, upon the discovery of some defect in a building, due to improper construction, if the defect is promptly repaired great damage to the building may be averted at a relatively small cost, while, if neglected, it may in time be the cause of the total destruction of the building. According to the theory of the appellant, if the owner folds his arms and allows the building to crumble, he may, when it has been entirely destroyed collect its whole value from the contractor; but if he immediately takes the necessary measures to repair the defective construction and in this wise restrict the amount of the damage, the expense thereby incurred must be borne by himself. The mere enunciation of this proposition is enough to show its absurdity. On the contrary, it is the duty of the contracting party injured by a breach of contract, to exercise reasonable care and diligence to avoid loss and minimize the resulting damage."

See, also *González* v. *Agostini*, 79 P.R.R. 481 (1956); 24 SCAEVOLA, *Código Civil* 98 and 99 (Part 2, 1951 ed.); VELÁZQUEZ, *Responsabilidad por los Defectos en las Edificaciones*, 20 *Rev. Jur. U.P.R.* 13 (1950).

■■ Likewise, it has been determined that vice of construction is understood to be "defects of construction." Judgment rendered by the Supreme Court of Spain, April 20, 1915 (133 *Jur. Civ.* 156, 166); IV-2 PUIG PEÑA, *Tratado de Derecho Civil Español* 306 *et seq.* (1951 ed.); 10 MANRESA,

*Código Civil Español* 919 (1950 ed.). And in order to determine what these vices or defects mentioned in the provisions of the section we are now considering consist of, we believe that Colin y Capitant succinctly expound it in maintaining "that the liability of the builder generally comprises all such types of vices as exceed the measure of the imperfections usually expected in a construction work." 4 COLIN Y CAPITANT, *Curso Elemental de Derecho Civil* 349 (1925 ed.).

■ The duty to compensate is a duty established in favor of any owner who acquires the building, provided the claim is made within the time provided by § 1483. TRAVIESAS, *op. cit.* at 45; 4 CASTÁN, *Derecho Civil Español Común y Foral* 491 (1956 ed.); SANTAMARÍA, *Comentarios al Código Civil* 639 (1958).

■ It has also been held that neither the architect nor the contractor, as the case may be, may be released from liability by alleging that he called the attention of the owner to the defects in the proposed construction. The duty of the contractor in that case is to refuse to undertake the work. The reason therefor is that the safety of what is built is of great public interest. *González v. Agostini, supra.*[2] It affects the safety of the owner as well as that of the general public. The destruction of a building affects the owner as well as the community and, since the engineer contractor has technical knowledge of his art, he is obligated by law to refuse to construct, if the proposed work does not meet the measure of safety required by the profession, the laws, and the regulations.

■■ As TRAVIESAS states in the afore-cited article at p. 45:

---

[2] The case of *González v. Agostini*, 79 P.R.R. 481 (1956), reversed sub silentio the case of *People v. Berríos*, 54 P.R.R. 483 (1939), which held that the Code was supplemental and that it could be stipulated contrary to that provided in § 1483.

"It is maintained that the responsibility of the contractor and the architect is of public interest, and they are not relieved from liability because the soil or the materials are supplied by the owner, except when the contractor has no obligation to know the vices of the soil.

"If this be so, the contractor is liable, as a general rule, for all kinds of defects that he ought to know within the degree of diligence required of him. (Civil Code, § § 1.104 and 1.101.) The contractor is also liable for the work executed by the workmen he employs (Civil Code, § 1.596), and the architect may be one of them."

■ To that effect MANRESA, referring to architects, but which may be equally applicable to contractors, states:

"We wish to set forth that in our opinion, the architect is not relieved from liability if the cause of the destruction is the defect in the soil, even if he shows that he gave the owner due notice of such defect, for his duty in this case is not to follow the latter's instructions but to refuse to undertake the work, because it is in the public interest." MANRESA, *op. cit.* at 921.

And at p. 347 of the afore-cited work COLIN Y CAPITANT maintain:

"But proof of fault imputable to the owner himself, for example, that it was he who prepared the plans, would not be a cause for discharging the constructor from responsibility since, in effect, he should not have accepted dangerous orders or defective plans."

See, also: VELÁZQUEZ, *op. cit.* at 25.

It is interesting to note that the contractor's own expert witness in this case, Mr. De Castro, testified the following, showing that he might know what to do in a situation like the present one:

"Q.—Mr. De Castro, in relation to these last questions of my colleague Fernández Cuyar, if you had a signed contract to construct a building and a change in the roof is made later, did you say that you wouldn't build the roof?

A.—I wouldn't accept the change, I mean, after giving the warning, I wouldn't.

Q.—Even if you had a signed contract?

A.—Well, that's a point where one can cancel a contract. Right now I had a case of a roof for which the owner didn't want the build-up roofing and he said: 'Well, whether it leaks or not, I'll be responsible.'

Q.—And what did you do?

A.—On those terms the roof was put up.

Q.—In a case such as this in which the owner doesn't accept liability; would you put up the roof?

A.—No, sir.

Q.—And if you already had a signed contract, wouldn't you put the roof up?

A.—I'd consult my lawyer."

Does § 1483 establish a presumption of guilt that obliges the contractor to prove that he is not liable for defects of construction?

The commentators disagree as to the correct solution to the present question. There are arguments in favor of both sides. MANRESA, *op. cit.* at 921, maintains that § 1483 does not establish a presumption of guilt against the contractor; SCAEVOLA, *op. cit.* at 104, 105 tends to concur with MANRESA, but he cites several commentators who maintain the opposite and ends by citing MARCADÉ and CHIRONI:

"Marcadé considers erroneous the doctrine of Duvergier and Troplong. 'Whenever, he writes, a construction perishes before the expiration of the warranty period, it is unquestionable that its ruin is not due to old age. If the loss is not due to force majeure, fire, floods, earthquakes, foundation ditches, etc., it is necessarily due to defects in the construction. And since fortuitous events are not presumed and are easily proved, it follows that presumption is established against the architect or entrepreneur who shall be liable for the ruin until they prove the existence of the fortuitous event, the unusual and unique event that can release them.'

"Chironi, in his remarkable treatise on guilt in Modern Laws, incidentally treats the subject in a footnote to § 68. After explaining the reason for the ten-year warranty period to insure the owner against the possible existence of hidden defects not

noticeable at the time of delivery, he states: 'The warranty is, in truth, perfectly established and insured by the imposition of the aforesaid ten-year liability on the architect or constructor; and better still, by the presumption, by virtue of which the ruin, in whole or in part, befalling within the ten years, is derived from a hidden defect for nonperformance of the obligation'."

After seriously considering this question, SCAEVOLA states:

"The foregoing denotes that, although § 1591 does not contain an express declaration of presumption, yet it partakes of a presumptive character, because it is so required by one of the two premises potentially inherent therein; and therefore, when it is not feasible to establish the cause of the ruin, it must be presumed, with Duvergier, that by the nature itself of the object perished, the cause of such ruin could be no other than defects of construction . . ." SCAEVOLA, *op. cit.* at 107–108.

The Laws of *Las Siete Partidas* established the presumption. Law 21 of the *Tercera Partida* above-cited provides:

"And if peradventure, any newly erected work fall, or totter before it is finished, or within fifteen years afterwards, the ancient sages ascribed the defect, to the fault, or fraud of those who were employed to construct it: and therefore they and their heirs are bound to rebuild it, at their own cost and expense; unless it were destroyed by accident, (*occasion*), as by an earthquake, or lightning, or by great inundations of rivers, of aqueducts, or other extraordinary accidents of a similar nature." Las Siete Partidas by ALPHONSO THE WISE, Vol. I, 1846 ed.

PLANIOL AND RIPERT, upon considering this question, maintain that the section of the French Civil Code which corresponds to ours, establishes the presumption, although it is limited to contracts by lump sum. 11 PLANIOL AND RIPERT, *Tratado Práctico de Derecho Civil Francés* 196 *et seq.* (1940 ed.). See, also: 5 AUBRY AND RAU, *Droit Civil Francais* 406, § 374 (1952 ed.); 2–2 JOSSERAND, *Derecho Civil* 236 (1951 ed.). COLIN Y CAPITANT, commenting on the difference, state:

"The distinction we have just pointed out is evidently very arbitrary; nevertheless, it has a practical advantage, which is,

that in the case of a lump sum contract, in which the profit of the contractor is a result of whatever economy he makes, it is well to threaten him with more severe penalties, so as to discourage him from making excessive economies." COLIN Y CAPITANT, *op. cit.* at 347–48.

And in truth, it seems to us arbitrary to maintain that a presumption of fault exists on the contractor's part when the work is constructed for lump sum and not when it is done on estimate. We deem it arbitrary because, undoubtedly, the reason for the presumption is that the contractor is in a better position to show the real cause of the ruin.

■ We understand that the reasonable thing is that, once the owner of the building shows that the work is in ruin, the burden is on the contractor to prove that the ruin is not due to defects of construction, regardless of whether the work was carried out for lump sum or on estimate. FUZIER-HERMAN, *Code Civil Annoté*, Tome sixieme, § 1792, p. 441.

We believe that the contractor is in a better position to show that the ruin is not due to defects of construction of the work. We are aware of the continuous innovations being made today in housing projects in order to lower the cost. We deem it more just that the contractors who have made these innovations should be obliged to show that any ruin of the work built is not due to faults in the construction.

In the States of the Union there does not exist the warranty statutorily established in the majority of civil-law jurisdictions. For a review of the law in those jurisdictions see: 6 WILLISTON, *Contracts*, Revised Edition, § 1964 *et seq.;* BERRICK, *Warranties in Building Contracts*, 6 U. Cinc. L. Rev. 121 (1932) ; Note, 21 Minn. L. Rev. 70 (1936) ; SELKER, *Right of Purchaser in Sale of Defective House*, 4 W. Res. L. Rev. 357 (1953) ; *State* v. *Commercial Casualty Ins. Co.*, 248 N.W. 807 (Neb. 1933) ; Annot. 88 A.L.R. 797; *United States* v. *Spearin*, 248 U.S. 132 (1918). Louisiana, which has a provision similar to ours, has been greatly influenced by

the concept prevailing in the other states of the Union. *Brasher* v. *City of Alexandria*, 41 So.2d 819 (1949) ; *Braube* v. *Ruth*, 114 So.2d 879 (1959). McMURDO, *Building Contracts in Louisiana*, 7 La. L. Rev. 564 (1947).

Having expounded the law, we shall now turn to apply it to the facts of this case.

Dr. Mariani agreed with engineer Géigel on the construction of a residence. Originally the house was designed with a reinforced-roof slab four inches thick. After the construction of the house had been started, Dr. Mariani decided to change the design of the roof for another which, as described at the trial, is constructed with terra-cotta tile with concrete beams spaced to the width of the tile and over all a slab of concrete two inches thick.

The trial court established in its findings of fact that "after the delivery of the work and before the lapse of one year after delivery, different faults or defects began to appear in the same, particularly in the construction of the concrete roof or platform in which there are large, serious and continuous leaks which have ruined the ceilings of the house and the paint on the walls, as well as the accumulation of water on the roof for lack of adequate drainage and slopes. The existence of the leaks and the seriousness thereof is admitted by the contractor. His defense is that they are not due to defects of construction.

Notwithstanding the fact that once the ruinous condition of the building is established, the burden is on the contractor to show that the ruin is not due to defects of construction, the owner, in the instant case presented expert engineer Mr. Beltrán, with more than forty years of experience, to show that the roof of the house did not have sufficient slopes and that the drainpipes were smaller than those required for the roof in question. And the trial judge gave credence to that proof.

Engineer Géigel seems to want to evade the responsibility imposed upon him by § 1483 invoking a letter he sent to the owners of the house in which he stated that he assumed no responsibility for any leaks that might occur. We have already seen that this does not discharge him from responsibility. His duty was not to build it if he thought the roof was inadequate.

On the other hand, the proof presented by the engineer attributed the leaks to another cause. When engineer Géigel testified, he said that the concrete used for the roof was in a proportion of 1-2-4, that is, one part of cement, two of sand, and four of stone. He testified that they began with that mix but that it later had to be reinforced, but he does not state the final proportion used nor at what stage of the work he made the change. Then, when the engineer's expert testifies, architect Mr. De Castro, he states that the way you make the mix is of great importance, of decisive importance, and that an error in the mix might cause certain serious irregularities or defects in the slab. (Tr. Ev. 303-304.) Further on, expert Mr. De Castro testifies that he uses a 1-2½-3½ mix, and, upon being asked if that is an adequate mix, he comments: "I daresay it is, because here one speaks of a 1-2-4 mix as a great one and it isn't because it lacks sand, what we call in Puerto Rico 'under sand'... and it isn't the same as the other one which has 1 part of cement, 2½ of sand and 3½ of stone." (Tr. Ev. 316.)

Thus, we see that the owner in the present case with his expert established that the leaks were due to lack of adequate drainage and that the roof lacked the necessary slopes to prevent the accumulation of water. And the contractor's proof, far from showing that the partial ruin of Dr. Mariani's house was not due to defects of construction, showed that the mix used for the roof slab was not the most suitable.

The contractor maintains that he cannot be ordered to pay the cost of a leak-proof roof. But the evidence showed

that the leaks were due to defects of construction. "Defective construction imposes on the architect or the contractor the obligation to correct his negligence *for the future* by restoring to the building all the qualities of a good construction." COLIN Y CAPITANT, *op. cit.* at 349. Thus, the trial court correctly ordered him to pay what was shown was the cost of restoring to the roof "all the qualities of a good construction."

The judgment appealed from is affirmed.