322 So.2d 812 (1975)
CATALINA POOLS by Bill Harper, Inc.
v.
G. S. SELLERS.
No. 7136.
Court of Appeal of Louisiana, Fourth Circuit.
November 11, 1975.
Rehearings Denied December 9, 1975.
*813 Lankford, Schneider & Lankford, New Orleans (John G. Lankford, New Orleans), for plaintiff and defendant in Reconvention-Appellee.
Carol B. Hart, New Orleans, for defendant and plaintiff in Reconvention-Appellant.
Before REDMANN, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
In response to plaintiff's suit for $384.34 for swimming pool supplies and services sold and furnished to defendant, he denied liability and reconvened for $2,411.50 for alleged damages. From a judgment dismissing both the main and the reconventional demands both parties have appealed.
Catalina had installed a swimming pool at Sellers' home in February, 1970, for $7,954.00. In March, 1974, Sellers discovered that the pool was leaking and on March 13 contacted Catalina to remedy the situation. At the suggestion of Catalina's president and manager, Bill Harper, a procedure was begun whereby Mr. and Mrs. Sellers would mark the water line on the pool and report the extent of the leak which proved to be a few inches a day. Catalina in turn looked for visible leaks and performed certain tests to determine the cause of the problem. At the conclusion of this procedure Catalina diagnosed the difficulty as "hollow spots under the plaster" or areas where the plaster finish on the walls of the pool had not adhered to the gunite out of which the walls were constructed. At the conclusion of this testing procedure Catalina presented Sellers with its bill for $384.34 consisting of checking for leak on March 18 and 23, testing lines on April 4, draining and washing pool, walls and floor, and patching two hollow spots on April 18, and checking for leaks on May 16. Catalina also then presented Sellers with a proposal to repair all hollow spots with related work for the sum of $1,745.50. Harper testified that the hollow spots are a natural occurrence and are not the result of faulty construction of the pool in the first instance. However, on cross examination, he said that this was the only pool he knew about which had hollow spots out of all those he had constructed in 20 years.
According to the Sellers, after Catalina's procedure had been completed the pool was left with stains and about 12 holes where the plaster had been removed in the process of Catalina checking on the hollow spots. Sellers testified that when Harper made his proposal he stated that there would be no guarantee against leaks, but he felt that the hollow spots had to be the cause of the leaking. After getting Catalina's proposal Sellers employed another company, Warren English Pool Service, to check for the leaks,
Everett Gray of the latter company testified that he inspected the pool and concluded that the leakage of water from the *814 pool, as well as seepage of outside ground water into the pool was occurring at the main drain in the pool. This, he said, was based upon cracks in the gunite which he found around the hydrostatic valve in the main drain, some of which were as wide as half an inch. In his opinion the cracks developed because the gunite mixture had not been properly mixed or poured or smoothed out when the drain was first installed. As to hollow spots, Gray said that where a pool is properly constructed they should not develop but in no event could leaks be caused by hollow spots unless they are around the main drain. Warren English Pool Service repaired the main drain and the main drain pipe, washed the pool and patched the holes which had been made in the plaster by Catalina, presenting Sellers with a bill for $411.50. According to Gray and the Sellers, the pool did not leak thereafter and its appearance was restored except for some freckle like spots on the pool's bottom and the marks where the new plaster was applied to the holes made by Catalina.
The trial judge did not give reasons for judgment, but implicit in his dismissal of Catalina's main demand is a finding that Catalina's investigation for the cause of the leaks and related work were not done properly. We have concluded from the evidence as summarized above that there is no error in this finding by the trial judge.
On the other hand, it becomes difficult to rationalize a dismissal of the reconventional demand of Sellers, once the conclusion is reached that Catalina is not entitled to recover on the main demand. If the trial judge had believed that it was necessary for Catalina to chip out the hollow spots in the Sellers' pool because this was a cause of the leaks he should have awarded Catalina a judgment on its main demand. By dismissing that claim the trial judge implied that the chipping of the hollow spots was unnecessary. It follows that Sellers ought to recover for the cost of replastering the spots. As to the removal of the stains, the evidence shows that the stains were not present before Catalina's procedure was carried out. The record, while vague, supports an inference that the stains were caused by ground water which seeped into the pool when the water level was lowered by Catalina during the two month period it was searching for leaks without success. Under the circumstances, we have concluded that Sellers is entitled to recover at least that portion of Warren English's bill for acid-washing the pool and patching the holes in the plaster, amounting to $170.80 since this work was required because of defective workmanship on the part of Catalina. Whether Sellers is entitled to recover the $240.70 remaining from Warren English's bill for the repair of the main drain is a more difficult problem.
While Catalina has taken issue on the point we find that the defects in the main drain caused the leakage and were repaired by English. But Catalina next tried to show that the cracks in the main drain were caused by the negligence of English's employees after Catalina's fruitless efforts were terminated. This is not supported by the evidence and constitutes speculation at best. The record shows that it is more probable than not that the defects were the result of faulty original construction so that the question becomes whether Sellers may recover for the repairs as a matter of law.
In the first place, Catalina's argument relative to principles of redhibition is not applicable. The installation of this pool by Catalina was a construction contract and not a sale. The relationship between Catalina and Sellers is one of contractor-owner and not one of vendor-vendee so that the provisions of LSA-C.C. Art. 2762 apply. See Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268, Polit v. Babcock, 232 So.2d 916 (La.App. 4th Cir. 1970), Unverzagt v. Young Builders, Inc., 207 So.2d 405 (La.App. 3rd Cir. 1967) affirmed 252 La. 1091, 215 So.2d 823. Article 2762 makes *815 the contractor liable if the "building" falls to ruin "on account of the badness of the workmanship." The record supports a finding that it was bad workmanship with respect to the main drain by Catalina which caused the Sellers' swimming pool to leak, and recovery would be indicated.
However, Catalina relies on the provision of its original contract with the Sellers, which provides as follows:

"WARRANTY
Contractor warrants its work to meet or exceed existing Building Department Codes and to be free from defects in material and workmanship for one year from completion of such work, and if any defects should occur within such time, shall remedy same without cost to the Owner(s) provided said Owner(s) has (have) complied in full with the terms of payment and other conditions of this agreement, and has (have) within the warranty period notified this contractor in writing of such defects. Purchased assemblies or material processing used in this installation are subject to the manufacturer's or processor's warranty. Contractor makes no warranty expressed or implied as to such equipment. Damage caused by neglect or improper maintenance is specifically excluded from this warranty."
By its own terms, this warranty provision does not suggest that the Sellers waived their statutory warranty by accepting the contractual one year warranty, so that this argument has no merit.
Catalina contends that it is entitled to recover on its main demand because its work was done on instructions from the Sellers. We do not find that the evidence supports this conclusion. Sellers did not know what was wrong with the pool. Under the law as found in C.C. Art. 2762 he had a right to call on Catalina to remedy the defect and the method of finding that defect was wholly within Catalina's expertise and was its responsibility. It was not acting simply as an agent for Sellers doing his bidding as it conducted its search for the leaks.
Finally, Catalina contends that it should be allowed recovery because its work was leading up to a successful repair of the pool, but Sellers prevented Catalina from completing its work. As we have already said, the trial judge apparently found that Catalina's work was improper, that it accomplished nothing during its search, and it follows that Sellers had every right to terminate those efforts and to decline to pay Catalina.
Included in Sellers' reconventional demand is a claim of $2,000.00 because of loss of the use of the pool from March 15 to June 1, 1974, and the permanent stains and unsightly condition with which the pool was left even after the work performed by Warren English. There is insufficient evidence to support this claim, and the trial judge properly disallowed recovery.[1]
Accordingly, the judgment appealed from is affirmed to the extent that there is judgment in favor of G. S. Sellers, dismissing the main demand of Catalina Pools by Bill Harper, Inc.
That portion of the judgment which dismissed the reconventional demand is reversed and there is judgment in favor of plaintiff in reconvention, G. S. Sellers, and against defendant in reconvention, Catalina Pools by Bill Harper, Inc. in the full and true sum of $411.50 with legal interest from date of judicial demand until paid and for all costs of these proceedings, including the cost of this appeal.
Affirmed in part, reversed in part and rendered.
NOTES
[1] Ugly spots on the bottom of the pool are shown in photographs which were taken before English completed its work but the record does not show the extent of this discoloration remaining after English was finished. We presume that much, if not all, of this ugliness was eliminated after English acid-washed the pool.