DOMENGEAUX, Judge.
Clyde Linzay, Jr. filed this action in warranty and in redhibition, seeking recision of contract and damages as a result of an allegedly defective swimming pool built by defendant, Sandy Ewing Acquatech Pools, Inc. By supplemental amending petition, Linzay’s two children, Stacey Linzay and Scott Linzay, were added as plaintiffs.
The Trial Judge sustained an exception of prescription as to the redhibition claim.[1] After trial on the claim in warranty, the lower court entered judgment for plaintiffs in the amount of $2,400.00. Both sides have appealed.
FACTS
In July of 1980, Clyde Linzay, Jr. and his wife, who is now deceased, met with *312 Charles Ewing, president of Sandy Ewing Aquatech Pools, Inc., at their Rapides Parish home to discuss the construction of a swimming pool in their back yard. After this meeting, Ewing mailed to the Linzays an “estimate letter” which contained a proposed pool design. This letter also included the following provision:
Pool shell and plumbing is guaranteed for as long as the pool remains the property of the original purchasers. All other parts are guaranteed for at least one year. The price is subject to change due to unknown soil conditions.
The Linzays rejected Ewing’s initial design, but soon thereafter, they gave their oral consent to another proposal. The parties did not sign a written agreement.
At this meeting in the Linzay home, Clyde Linzay told Ewing that he was concerned about unstable soil conditions in the area. Ewing testified that he immediately recommended Linzay hire a soil engineer to conduct tests, because any soil problems would be the homeowner’s responsibility. According to Linzay, however, Ewing assured him that any problems would be his [Ewing’s] and not Linzay’s. In any event, no soil samples were taken prior to construction of the pool, which was completed in August of 1980. Upon completion of construction, Linzay immediately tendered a check for the purchase price of $15,-030.00.
Problems began to develop within two weeks of construction. The decorative title began to fall out of place, and hairline cracks appeared in the pool’s shell. One year later, the deck area moved approximately one inch. Later, the pool itself shifted upwards and sideways approximately one and a half inches. Linzay testified that at the time of the trial the pool was cracked in approximately thirty places, and the shell was still separating. Ewing and his employees made several attempts to repair the damage through May of 1984, including replacement of the entire deck area, but these efforts were unable to prevent the pool from moving.
Newton Joseph Gorsha, an expert in civil and geotechnical engineering, was hired by the defendant in August of 1986 to conduct a soil analysis of the Linzay property. Gorsha testified that, upon visual inspection, the soil at the Linzay home appeared to be of a dry, sandy nature. He explained that such soil is ideal for pool construction because water flows freely through it, without affecting its volume. However, after conducting laboratory tests, Gorsha concluded the Linzay soil was in fact a dry clay which expands in volume when saturated with water.
According to Gorsha, several precautions could have been taken prior to construction which would have protected the pool from soil expansion, had the true nature of the soil been known at that time. Although soil samples are not normally taken prior to the construction of a pool, Gorsha testified that he would not have proceeded with construction without testing the soil if he had been warned of possible unstable conditions.
Charles Ewing was accepted by the Trial Court as an expert in pool construction. He testified that the construction standards of this pool were superior to current industry guidelines. In his opinion, the cause of the pool’s moving and cracking was the expansive nature of the soil. He considered this to be an unknown, subsurface condition that was not covered by the pool’s lifetime guarantee.
LIABILITY
The rights and obligations of the parties to this building contract are governed by Civil Code Article 2762,[2] Unverzagt v. Young Builders, Inc., supra.
Although defects in the soil are not specifically mentioned therein, the jurisprudence has extended Article 2762 to hold the *313 builder responsible for those soil defects which are not latent. As stated by our Supreme Court in Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268, 271-272 (1967):
While undertakers and architects under Article 2762 are held harmless for “defects in the soil,” it is latent defects in the soil which are meant. Hence a different result would obtain if the soil defect was apparent to the undertaker. And it could not be otherwise, unless a contractual stipulation governed the question. For the requirements of public order and the obligation implicit in every contract that the work will be done in a good and workmanlike manner would compel us to reject a contention that an undertaker is not responsible for building upon a site which he knows to be defective. In such a case, the barest standards of care would require him to bring the defect to the attention of the owner before proceeding. The owner would then have an opportunity to make the indicated adjustment in the contract to provide against the defective soil condition of which he had no prior knowledge. Matthews v. Rudy, 4 La.App. 226 (1926).
Not only do we think Article 2762 imposes liability upon an undertaker who builds upon a site he knows to be defective, but we are also of the opinion he is liable for the loss resulting from a structure falling into ruin when he should have known by the exercise of proper judgment that a condition at the site, other than a latent defect in the soil, should be corrected before proceeding with the work, and he fails to advise the owner in time to permit an adjustment. This is an obligation of the undertaker which seems plain to us. Draube v. Rieth, 114 So.2d 879 (La.App.1959). For the contractor has expert knowledge of such things, or should have, and he must bring these things to the attention of the owners, who have knowlege of such affairs. See Jung v. Gwin, 174 La. 111, 139 So. 774 (1932).
In written reasons for judgment, the Trial Judge correctly noted that the contractor is ordinarily not responsible for damages caused by latent soil defects. In this case, however, the lower court imposed liability on the contractor because the homeowner warned him of such defects prior to construction of the pool. The Trial Judge was of the opinion that Ewing, after being informed by Linzay of unstable soil conditions, should not have proceeded with construction until the soil was tested. After a review of the record and the applicable jurisprudence, we are unable to conclude that the Trial Court committed manifest error in holding the contractor liable under these circumstances.
Defendant argues that the plaintiffs should bear responsibility for these damages because Linzay, the homeowner, was more familiar with the soil conditions than Ewing, the contractor. Indeed, Linzay testified that he had experienced cracks in both his home and his driveway and that he was aware of similar problems experienced by others in the area. Ewing, on the other hand, testified he had successfully constructed several pools near the Linzay home. He, therefore, had no reason to suspect problems of this nature.
The jurisprudence does not support this argument. In Louisiana, it is the contractor, and not the homeowner, who is considered to have expert knowledge of such matters. Wurst v. Pruyn, supra. We are of the opinion that the builder cannot escape liability by claiming that he was unaware of soil conditions, when, in fact, those very conditions were brought to his attention by the homeowner prior to construction. See Wetmore v. Blueridge, Inc., 391 So.2d 951 (La.App. 4th Cir.1980).
DAMAGES
While we affirm the Trial Court’s finding of liability, we cannot agree with its assessment of damages. The Trial Judge denied plaintiffs’ request for recision of this contract because the plaintiffs did not introduce expert testimony that the pool must be replaced. Accordingly, the lower court awarded plaintiffs only $2,400.00 as costs for repair of the pool. Although Linzay did not produce his own *314 expert, we find ample evidence in the record to support his contention that the pool is not suitable for its intended use.
Both experts testified that the cause of the pool’s movement was the expansion of the clay soil. According to Gorsha, the nature of this soil will not change, and evidence of its continued expansion was presented by Linzay, who testified that new cracks are still appearing in the pool’s shell. Gorsha and Ewing outlined extensive proposals for repair of the pool; however, both experts admitted these repairs might further weaken the existing structure. Ewing testified that, while he is willing to repair the pool, he cannot guarantee it will withstand further movement of the soil. In his opinion, the pool would have to be repaired each time the soil moved. Finally, Ewing’s repeated, but unsuccessful, attempts to repair the pool through May of 1984 provide further evidence that these soil conditions will never sustain this structure. Based upon the above, we must conclude the Trial Judge was manifestly erroneous in holding that the pool is not a total loss.
Where defects in the contractor’s work are such that they cannot be corrected except by removing and replacing the construction, the owner may require the contractor to remove the object from his land and restore the premises to their prior condition. In such cases, the plaintiff is entitled to recover the full purchase price plus damages. Caubarreaux v. Hines, 442 So.2d 898 (La.App. 3rd Cir.1984), writ denied, 446 So.2d 1225 (La.1984).
In this case, concerning damages, the plaintiffs did not present evidence as to the cost of demolition of the pool and restoration of the premises. However, Ewing testified that he could remove the pool and return the property to its condition before construction at a cost of $800.00 to $1,000.00.
Accordingly, plaintiffs are entitled to the sum of $15,030.00, representing the purchase price, in addition to damages in the amount of $1,000.00.
For the above and foregoing reasons, the judgment of the Trial Court is reversed in part, affirmed in part and recast as follows:
It is Ordered, Adjudged and Decreed that there be judgment in favor of plaintiffs Clyde Linzay, Jr., Stacey Linzay and Scott Linzay and against defendant, Sandy Ewing Aquatech Pools, Inc., in the amount of $16,030.00, plus legal interest thereon from the date of judicial demand until paid and all costs at trial. Costs on appeal are assessed against defendant.
REVERSED IN PART, AFFIRMED IN PART, AND RECAST.

. This ruling is not before us on appeal. However, we note that Louisiana jurisprudence has consistently held that contracts for the construction of a swimming pool are building contracts, and are, therefore, not subject to the principles of redhibition. Unverzagt v. Young Builders, Inc., 207 So.2d 405 (La.App. 3rd Cir.1967), affirmed, 252 La. 1091, 215 So.2d 823 (La. 1968); Catalina Pools v. Sellers, 322 So.2d 812 (La.App. 4th Cir.1975); Holland v. Hurst, 385 So.2d 495 (La.App. 1st Cir.1980); Aizpurua v. Crane Pool Co., Inc., 439 So.2d 572 (La.App. 1st Cir.1983), modified, 449 So.2d 471 (La.1984).

. "If a building, which an architect or other workman has undertaken to make by the job, shall fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall hear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks."