Eldred A. REYNOLDS, Appellant,

v.

ROYAL MAIL LINES, Limited, a Corporation, and Associated-Banning Company, a Corporation, Appellees.

No. 15676.

United States Court of Appeals
Ninth Circuit.

March 25, 1958.

Rehearing Denied April 30, 1958.

Margolis, McTernan & Branton, Roberta Johnson, San Francisco, Cal., Ben Margolis, Los Angeles, Cal., for appellant.

Lillick, Geary, McHose, Roethke & Myers, Gordon K. Wright, Robert Sikes, Los Angeles, Cal., for appellees.

Before FEE and BARNES, Circuit Judges, and HAMLIN, District Judge.

HAMLIN, District Judge.

Plaintiff filed this action in the United States District Court, Southern District of California, Central Division, alleging that he received injuries while he was employed as a longshoreman by Associated-Banning Company, a corporation, (hereafter Associated), on board the vessel S. S. Loch Gowan in the Los Angeles Harbor area. The vessel was owned by Royal Mail Lines, Ltd., one of Appellees herein (hereafter Royal).

The complaint, invoking the jurisdiction of the Court upon the ground of diversity of citizenship, 28 U.S.C. § 1332, was in two counts. The first count alleged that his injuries occurred by reason of the negligence of Royal in failing to provide plaintiff with a safe, proper and seaworthy place in which to work, and in negligently failing to maintain, control, operate and keep said vessel, its equipment, gear and appliances in a safe, proper and seaworthy condition. The second count alleged that plaintiff's injuries occurred by reason of the failure of Royal to provide him with a seaworthy vessel.

Prior to trial Appellee Royal brought a third party action against Appellee Associated alleging that if the vessel was unseaworthy, such unseaworthiness was caused by Associated, and praying that in such event Royal recover full indemnity against Associated.

By stipulation of the parties, the first cause of action was tried to a jury, and the second cause of action based upon unseaworthiness was tried to the Court on the evidence adduced at the trial of the first cause of action. The jury returned a verdict in favor of Royal upon the first cause of action, from which verdict and judgment plaintiff has taken no appeal. Upon the second cause of action, the Court made findings of fact and concluded that the vessel, her gear, appliances and equipment were seaworthy and reasonably fit for the purpose for which they were intended, and rendered a judgment for Royal on this issue and dismissed the third party complaint. Plaintiff appeals from this judgment alone, which appeal was timely taken. Jurisdiction to this Court rests upon Title 28 U.S.C. §§ 1291 and 2107.

The evidence discloses that the plaintiff was one of a gang of longshoremen who commenced work at No. 3 hatch upon the vessel in question about 7 P.M. and that he was injured about 9 P.M. when a wooden platform,[1] called by seamen an "O'Brien", which was in the vicinity of a No. 3 starboard winch, fell and struck the plaintiff and caused certain claimed injuries to him. The Court found that before the accident fellow servants of the plaintiff employed by Associated had rigged the O'Brien in an upended position, and that it was being employed as a windbreak. The O'Brien was designed to protect the wooden deck surface of the vessel during loading and unloading operations, and was not designed to be used as a windbreak. The evidence shows that the O'Brien was secured by a rope tied at one upper corner and running to the No. 3 hatch. While the hatch gang, including the Appellant, were engaged in putting the hatch covers on the No. 3 hatch, the Court found that the O'Brien fell upon plaintiff "after either plaintiff himself or a rope he was pulling which led to a portion of a hatch cover he was then helping to move, collided with either or both the O'Brien itself and the rope securing it to the after starboard corner of the hatch."

The right of a seaman to recover damages from the owner of a ship by reason of the unseaworthiness of the ship has been extended to stevedores while doing work upon the ship. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. The shipowner's implied warranty of seaworthiness is "essentially a species of liability without fault, analogous to the other well known instances in our law." Id., 328 U.S. at page 94, 66 S.Ct. at page 877. The shipowner's liability for unseaworthiness is imposed by law regardless of whether or not the shipowner was negligent. Ibid.; Read v. United States, 3 Cir., 1953, 201 F.2d 758, 763.

This warranty of seaworthiness, however, is not that the ship, or gear, or equipment is absolutely seaworthy and safe in all events, but only reasonably so, and then only when employed or used for some purpose for which it is intended. Nunes v. Farrell Lines, 1 Cir., 1955, 227 F.2d 619; Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 1954, 213

---

1. 73½ inches by 102 inches, weighing "a couple of hundred pounds".

F.2d 397; The Tawmie, 5 Cir., 1936, 80 F.2d 792.

Appellant contends that the evidence clearly indicated that there was an unseaworthy condition and that the findings of the Court below with respect to unseaworthiness are without support in the evidence, and for this reason the judgment of the Court below should be reversed. While the witnesses generally agreed upon the general location of the O'Brien, there were differences in the testimony as to its exact location,— whether it was standing on its long end or on the wide side, just where it was with respect to the corner of the hatch, just exactly where the rope supporting it was tied, whether the plaintiff had seen the O'Brien before the accident or not, whether it was the rope which supported the O'Brien or the O'Brien itself which was struck, whether the O'Brien was parallel or cater-corner to the winch. Some seven photographs were introduced in evidence, five of them showing the location on the vessel where the accident occurred and two of them showing pictures of an O'Brien which was similar to, if not the precise O'Brien involved in the accident.

2. "The Court finds:
* * * * *
"(6) That prior to said accident the fellow servants of plaintiff employed by Associated-Banning Company rigged a windbreak in the vicinity of the after No. 3 starboard winch.

"(7) That an upended 'O'Brien' or wooden platform, 102" by 73½" by 3" in size, belonging to the S.S. Loch Gowan, was employed as said windbreak.

"(8) That said 'O'Brien' was designed to protect the wooden deck surface of the vessel during loading and unloading operations and was not designed to be used as a windbreak.

"(9) That the use to which plaintiff's fellow servants, the longshoremen, put said 'O'Brien' was not a purpose for which it was intended.

"(10) That there was no defect or unseaworthiness of said 'O'Brien' if used for the purpose for which it was intended.

"(11) That the positioning of the said 'O'Brien' in an upended manner for use as a windbreak did not render the deck

The learned judge who tried the case had the opportunity to see and hear all of the witnesses, to see the pictures introduced in evidence, and to listen to the explanation of the witnesses in reference to these pictures. At the conclusion of the case, the trial judge made findings as set out in the footnote.[2] Thereafter, the Court concluded as a matter of law from these findings that the vessel, her gear, appliances and equipment were seaworthy and reasonably fit for the purpose for which each was intended to be used.

 The burden of proof of unseaworthiness rested upon the Appellant. Freitas v. Pacific-Atlantic Steamship Co., 9 Cir., 1955, 218 F.2d 562.

"Ordinarily, where there is a dispute as to fact which must be resolved from the conflicting testimony of witnesses, the findings of the trial judge who had the opportunity to observe the demeanor of the testifying witnesses and thus to judge their credibility, are conclusive upon appeal unless clearly erroneous." Overman v. Loesser, 9 Cir., 1953, 205 F.2d 521, 522.

at No. 3 hatch unsafe or unseaworthy.

"(12) That at all times pertinent, the area in and about place where plaintiff's accident occurred was well lighted and the decks dry and free of foreign substance.

"(13) That prior to plaintiff's accident he was aware of the position of the said 'O'Brien'.

"(14) That said 'O'Brien' fell after either plaintiff himself, or a rope he was pulling which led to a portion of a hatch cover he was then helping to move, collided with either or both the 'O'Brien' itself and the rope securing it to the after starboard corner of the hatch.

"(15) That as a result of said 'O'Brien' falling, plaintiff fell but did not come in contact with a bolt protruding from the face of the pilot house aft of No. 3 hatch 20" above the surface of the deck.

"(16) That the bolt or bolts protruding from the face of the pilot house were used to secure portable metal shields and were reasonably fit and safe for the purpose for which they were intended."

As indicated above, the trial Court found no unseaworthiness of the O'Brien or of the deck of the ship in the vicinity of the accident. This Court cannot say that the findings of fact of the lower Court were clearly erroneous or that they were erroneous at all. Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.

The judgment of the District Court is affirmed.