RIDLEY INVESTMENT COMPANY, Plaintiff-Below, Appellant, v. HELEN P. CROLL, *et al.*, Defendants-Below, Appellees.

(*June* 17, 1963.)

TERRY, C. J., WOLCOTT and CAREY, J. J., sitting.

*Donald W. Booker* and *Alfred J. Lindh* for the Plaintiff-Below, Appellant.

*Rodney M. Layton* and *William T. Quillen* (of the firm of Richards, Layton and Finger) for the Defendants-Below, Appellees.

Supreme Court of the State of Delaware, No. 88, 1962.

TERRY, Chief Justice.

On March 12, 1959, plaintiff, Ridley Investment Company, entered into a written contract which obligated de-

fendant to construct four post office buildings, including one at Milton, Delaware, which is the subject of the present controversy. The plans and specifications for the construction were prepared by plaintiff. When defendant began excavation, soft soil was discovered, and defendant immediately informed plaintiff of this condition. At plaintiff's request, defendant engaged the services of an experienced workman in the field of foundation support, who recommended that additional piling be placed beneath the exterior walls. Plaintiff concurred in this recommendation, authorized the additional piling, and paid defendant for the additional expense incurred in providing such piling. Shortly thereafter, Mr. Sharp, the workman referred to above, recommended to defendant that additional piling be placed beneath the floor itself. Although the evidence before the trial court sitting without a jury was conflicting, the court found that defendant had imparted this information to plaintiff, who, after some delay, informed defendant that no additional piling was necessary and that the work should proceed in accordance with the plans and specifications furnished to defendant.

After the installation of the floor, substantial settling of the foundation and the building occurred. Plaintiff was required by postal authorities to correct this defect and brought this action to recover the expenses incurred in effecting such repairs. The trial court gave judgment for the defendant, and it is from this decision that plaintiff prosecutes this appeal.

At the outset, it should be noted, as contended by plaintiff, that the present case does not present the question of impossibility of performance. The evidence before the court indicates that it was, in fact, possible to build an adequate structure on the site in question. It is equally true, as contended by plaintiff, that mere inconvenience or substantial increase in the cost of compliance

will not excuse a promisor from the duty to perform his contractual obligations. See *Safe Harbor Fishing Club v. Safe Harbor Realty Co.*, 34 Del.Ch. 28, 107 A.2d 635 (Court of Chancery, 1953). This contention, however, begs the question which is raised here, i. e., which party bears the responsibility for insuring that the structure is adequate for the purposes to be served by it. If defendant had no duty other than to follow the plans and specifications provided by the plaintiff, the fact that it was possible to build a better structure by following alternative plans and specifications would be legally irrelevant.

In support of its contention that the defendant breached its duty, plaintiff has cited *White v. Mitchell*, 123 Wash. 630, 213 P. 10 (1923). This case is clearly distinguishable since the court, in White, indicated that the owner had no business experience and relied upon the judgment of the defendant contractor. The cases of *School Trustees of Trenton v. Bennett*, 27 N.J. Law 513 (1859), and *Lonergan v. San Antonio Loan and Trust Co.*, 101 Tex. 63, 104 S.W. 1061, 106 S.W. 876, 22 L.R.A.,N.S., 364 (1907), cited by plaintiff, appear to support the position propounded by plaintiff. However, a close examination of these cases indicates matters not found in the instant case. In the Bennett case, the court found that the contractor had made an absolute and unqualified promise to construct an adequate building; no discussion is given to the question of which party prepared the specifications. In Lonergan, the court noted that the specifications were prepared by an independent architect and that the plaintiff-owner had no great experience in this field. Accordingly, the court held that defendant must bear the loss resulting from a defect in the specifications prepared by the architect. To the extent that the Lonergan decision stands for the proposition that a contractor may not avoid liability by following plans

and specifications prepared by the owner or his agent in a workmanlike manner, we do not adhere to that opinion.

The lower court held that defendant was exonerated from liability because the damages resulted from a defect in the plans and specifications prepared by the owner and which were followed by defendant in a workmanlike manner. Plaintiff contends here that the court below failed to distinguish between defects inherent in the plans and specifications and defects extrinsic to such specifications, such as a latent defect in the soil. This argument is untenable, since plans and specifications do not exist in a vacuum; they are made for a particular building at a particular place. The defect in the plans and specifications for the building in question was the failure to make provision for adequate pilings and other support for the floor; the fact that these plans and specifications might provide for an adequate building in some other place does not render the plans and specifications less defective for the location in question.

Plaintiffs contends, however, that there is little or no decisional authority supporting the position taken by the lower court with respect to the legal duty of a contractor when defective plans and specifications are present. Plaintiff contends that such cases as *Filbert v. City of Philadelphia*, 181 Pa. 530, 37 A. 545 (1897), are inapposite since they involve public works projects, where the discretion of a contractor is much more circumscribed than on a private construction project. This argument is wholly untenable. The great weight of authority supports the proposition, enunciated by the lower court, that a contractor is not liable for any damage occasioned by a defect in plans and specifications furnished by the owner if he performs his work without neglect and in a workmanlike manner. See *Draube v. Rieth*, 114 So.2d 879 (La.Court of

Oppeals, 1959) ; *Blue Bell, Inc. v. Cassidy,* 200 F.Supp. 443 (U.S.D.C.N.D.Miss.Ed., 1961) ; *Fuchs v. Parsons Construction Co.,* 172 Neb. 719, 111 N.W.2d 727 (1961) ; Corbin on Contracts, Sec. 1338; 9 Am.Jur., Building and Construction Contracts, Sec. 28.

■ Plaintiff's course of conduct during the construction period also indicated that it understood that it had the responsibility to change the specifications to provide additional support and to furnish additional compensation to defendant for such services. As noted above the lower court found that plaintiff was informed of the need for additional support under the wall area and informed defendant that such additional support was not necessary. Although plaintiff contests this finding of the lower court, it is supported by competent evidence in the record and will not be disturbed here. *E. I. DuPont deNemours & Co. v. I. D. Griffith, Inc.,* 11 Terry 348, 130 A.2d 783 (1957). Even if defendant was obligated under the contract to produce a structure free from any defects, plaintiff's instructions to defendant, despite the admonition given it, would excuse defendant from any further liability. See *Glass v. Wiesner,* 172 Kan. 133, 238 P.2d 712 (1951).

The judgment below is affirmed.