John J. YOUNG, Plaintiff,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant and Third-Party Plaintiff,

v.

PIERSIDE REPAIRS, INC., Third-Party Defendant.

No. 66 Ad. 703.

United States District Court
S. D. New York.

Oct. 18, 1968.

---

George J. Engelman, New York City, for plaintiff.

Foley, Grainger & Darby, New York City, for defendant and third-party plaintiff; Walter Darby, Jr., New York City, of counsel.

McHugh & Leonard, New York City, for third-party defendant; James M. Leonard, New York City, of counsel.

OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW

WEINFELD, District Judge.

Plaintiff, a marine carpenter employed by Pierside Repairs, Inc., was shoring cargo in the upper 'tween deck of the No. 2 hold of SS Flying Spray, owned by defendant American Export Isbrandtsen Lines, Inc., when he met with an accident and sustained injuries. The cargo consisted of structural steel of various sizes and shapes, requiring plaintiff and his co-workers, in carrying out their assigned task, to move over uneven and shaky surfaces. Plaintiff, while walking on the uneven surface to get a wooden shoring brace, tripped over lashing wire, causing him to fall onto the steel stow with his

weight on his right leg and twisting his right knee.

The accident occurred in the port wing about eight or ten feet from the square of the hatch. There was no artificial light in the hold, which was crowded with the irregular cargo. The only light, natural light, entered into the hatch square from above through a narrow opening about one and a half to two feet, but this did not afford adequate lighting conditions. The accident happened at about 8 p. m., when the hold was dark and shadowy, and objects within the hatch were not clearly visible; only the outlines of the steel pieces could be seen. The men had to feel their way about while working. The sun set at 8:02 p. m. It was cloudy at the time of the accident.

■ Under all the circumstances, the absence of artificial light in the hold made it not reasonably fit for the men there to carry out their assigned duties in reasonable safety—the ship was unseaworthy. The evidence also supports a finding that the shipowner was negligent in that it failed in its nondelegable duty to exercise reasonable care to keep the hold a reasonably safe place in which to work.[1] The men had asked for an artificial light when they went to dinner at about 6:20 p. m.; they returned at about 7 p. m. At about 7:40 a cluster light was lowered into the hold, but it flared out immediately and no other light was supplied to the hold. Between that occurrence and plaintiff's fall, five or ten minutes thereafter, no other light was lowered to replace the one that had failed, although the ship's cargo mate had gone to get another. Since the hold itself did not have artificial light, of which the ship's officers were aware, adequate light should have been provided in the hold by the time twilight had set in, even if the men had not requested it. Adequate artificial light was then required in order to make the area a reasonably safe place in which to work. The failure of the ship's officers to supply sufficient light in the darkened hold, when they knew the men would be working there long after sundown, was negligent conduct. The accident was proximately caused by the unseaworthy condition of the vessel; also by the negligence of the defendant.

■ Plaintiff continued to work after the light failed; he had to grope his way about to carry on his job. Since he had reason to expect that a replacement would be promptly lowered, his conduct is understandable, but nonetheless negligent.[2] Under the circumstances, the award is reduced by twenty per cent.

Plaintiff sustained a rupture of the cartilege of his right knee. The accident occurred on May 11, 1966. He was in traction from May 14 to May 20 and his right leg was immobilized in a plaster cast until June 13, 1966. Thereafter he wore a knee brace for four months and for a period required crutches in walking; he used a cane as late as March 12, 1968. His treatment included physical therapy for six months. The injury caused him pain and discomfort. In December, 1966, plaintiff's doctor, noting that conservative treatment had not resulted in improved recovery, recommended surgery, the removal of the offending matter in plaintiff's knee joint. Plaintiff, apprehensive that a childhood knee injury would increase the risk of operative failure, refused to undergo the recommended surgery. The doctor, called by plaintiff, testified that even taking into account plaintiff's medical history, the operation was a simple procedure that presented no unusual risk, was reasonably calculated to be successful and, if so, would permit plaintiff to resume his usual occupation. The doctor estimated that the surgical and hospital expenses

1. Albanese v. N. V. Nederl. Amerik Stoomv. Maats, 392 F.2d 763, 764 (2d Cir. 1968).

2. Cf. Santomarco v. United States, 277 F. 2d 255, 257 (2d Cir.), cert. denied sub nom. American Stevedores, Inc. v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed. 2d 52 (1960); see Hudson v. Church of Holy Trinity, 250 N.Y. 513, 166 N.E. 306 (1929).

would cost about $2,000, and that post-operative hospitalization and convalescence would require approximately nine weeks, following which plaintiff would be able to return to work. Plaintiff now seeks damages for loss of wages and continued pain and suffering to this date, almost two years beyond the date of the recommended surgical treatment.

 The plaintiff was under a duty to take reasonable steps to effect a cure for his injuries and to mitigate damages.[3] The court finds that the recommended operation was a simple and normally safe surgical procedure that presented no grave or serious risk, and that plaintiff was in a physical condition to undergo the operation. Under the circumstances, damages may not be awarded beyond the date when full recovery could have been anticipated had the operation been performed. Plaintiff was advised of the operation, and in condition to submit to it, in early December, 1966. Plaintiff's doctor testified that in his opinion, which the Court accepts, had plaintiff consented to the operation, he would have been able to return to his job, after the nine-week period for hospitalization and recovery, by about February 10, 1967. Accordingly, all items of damage will be limited to that date.

Plaintiff's average monthly earnings for the first four months in 1966 preceding the accident and for the two years before were at the rate of $765. Plaintiff is entitled to loss of wages for the nine-month period from May 11, 1966 to February 10, 1967 in the sum of $6,885. He is also entitled to doctors' fees and medical expenses incurred in the amount of $1,072. In addition, since it has been found that plaintiff was required, as a reasonably prudent person, to have consented to the operation to reduce damages, he is entitled to the expense thereof in the sum of $2,000, totalling in all, $9,957.

In addition, plaintiff is allowed for pain and suffering the sum of $6,000, or a total of $15,957 damages, less twenty per cent, for a total judgment of $12,766 against the defendant American Export Isbrandtsen Lines, Inc.

██ There remains the claim over by the defendant against Pierside Repairs, Inc., the third-party defendant. Pierside had been engaged by the defendant to secure and shore the steel cargo and was in charge of the operation. It breached its warranty of workmanlike performance by failing to provide adequate light in the hold for plaintiff and his co-workers to carry on their jobs under reasonably safe conditions, and in permitting plaintiff and his co-workers to continue on the job in the absence of adequate light.[4] That the shipowner was also at fault does not exonerate Pierside for its breach of warranty of workmanlike service.[5] No act or conduct on the part of American Export Isbrandtsen Lines, Inc., hindered or prevented Pierside from carrying out its obligation of workmanlike performance.

The defendant is entitled to indemnification in addition to reasonable attorneys' fees and expenses in defense of the main action. If the parties cannot agree upon this amount, the Court will fix the sum in the judgment to be entered.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

3. Cf. Murphy v. American Barge Line Co., 169 F.2d 61, 64 (3d Cir.), cert. denied, 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406 (1948); Lewis v. Pennsylvania R.R., 100 F.Supp. 291, 294 (E.D.Pa.1951); Lyons v. Erie Ry., 57 N.Y. 489 (1874); Restatement of Torts, sec. 918, comment d (1939).

4. Cf. Albanese v. N. V. Nederl. Amerik Stoomv. Maats, 392 F.2d 763, 765 (2d Cir. 1968).

5. Cf. Mortenson v. A/S Glittre, 348 F.2d 383, 385 (2d Cir. 1965); Misurella v. Isthmian Lines, Inc., 328 F.2d 40, 42 (2d Cir. 1964).