Salvatore **RAPISARDI**, Plaintiff-Appellee,

v.

**UNITED FRUIT COMPANY**, Defendant and Third-Party Plaintiff-Appellant,

v.

**SAM BARBARA CO., Inc.**, Third-Party Defendant-Appellant.

Nos. 369, 370, Dockets 33845, 33925.

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1971.

Decided April 21, 1971.

---

Alvin I. Apfelberg, New York City, for appellee.

William M. Kimball, John G. Ingram, Burlingham, Underwood, Wright, White & Lord, New York City, for United Fruit Co.

Raymond C. Green, Herbert Lasky, New York City, for Sam Barbara.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

In this action against the United Fruit Company, owner of the vessel S.S. FRA BERLANGA, plaintiff, a wood butcher [1] employed by the third-party defendant Sam Barbara & Company (Barbara), alleged in his complaint that while he was in the course of his employment upon the vessel he had suffered physical injury and consequential loss as the result of the shipowner's negligence and the vessel's unseaworthiness.[2] As is the practice in such cases, the ship owner filed its third-party action against Barbara for indemnification.

Barbara had been engaged by the shipowner to perform demolition and other work on the FRA BERLANGA. On the morning of June 1, 1966, Rapisardi boarded the vessel, which was moored at Pier 3 in New York City, and, with fellow employee Vincent DeMilta, was assigned by Barbara's foreman to demolish two seven-foot high plywood partitions in the No. 2 hold on the 'tween deck. After examining and choosing their tools,[3] they began working as a team. DeMilta held a steel splitting bar (similar to a large chisel) against the partition and plaintiff struck it with a "steel head maul" (a large metal hammer). The cutting edge of the bar frequently struck metal brackets, screws, and nails in the wood partition. At 9:30 plaintiff was struck in the left eye by a large metal chip from the splitting bar.

The district court trying the action found for Rapisardi, held the shipowner liable, and granted it indemnity against the third-party defendant.[4] Relying on the result reached in Reynolds v. Royal Mail Lines, Ltd., 254 F.2d 55 (9 Cir. 1958), both Barbara and the shipowner renew the argument made below that the bar was fit for its intended use, namely that of demolishing wood, and that plaintiff's continual use of it in demolishing incidental metal was negligent inasmuch as plaintiff knew, or should have known, that such use would dull the cutting end of the bar, require the application of more and more force, and cause further use of the bar and maul to become increasingly dangerous. However, the district court found that Rapisardi's usage was an accepted practice, known to Barbara; that it had not been shown that the bar had in fact become dull, dangerously dull, or that a dullness of the bar had proximately caused the injury;[5] and concluded that

---

1. This is a slang term used on the waterfront pertaining to marine carpenters; the functions of a wood butcher correspond to those of a "rough carpenter" as opposed to a "cabinet maker" or "finished carpenter."

2. The negligence claim was abandoned at trial.

3. The tools were the property of the third-party defendant and were stored on the vessel. They were provided as needed by Barbara's foreman.

4. The district court's Memorandum Opinion is reported at 300 F.Supp. 943.

5. Although the parties were in agreement that the chip was once a part of the bar, neither party was able conclusively to demonstrate from which end of the bar— the cutting end or the hitting end—the chip had fragmented. The district court was not clearly erroneous in finding that the defendant had not proved either that the cutting edge had become dull as a result of misuse or that this caused the accident.

the bar was unseaworthy because it was not fit for its intended use. Petterson v. Alaska S. S. Co., 205 F.2d 478, 479 (9 Cir. 1953), aff'd 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); Van Carpals v. The S. S. American Harvester, 297 F.2d 9 (2 Cir. 1961), cert. denied, 369 U.S. 865 (1962); cf. Street v. Isthmian Lines, Inc., 313 F.2d 35 (2 Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L. Ed.2d 53 (1963). Although we of this court might have concluded otherwise than the experienced judge below if we had been the original triers of fact, we are not persuaded that a reversal of the liability holdings below is demanded. See Cleary v. United States Lines Co., 411 F.2d 1009 (2 Cir. 1969); Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776–778 (2 Cir.), cert. denied, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966).

However, we do remand the case for further consideration of the issues arising from the claims of injury and damage. The court awarded plaintiff a total sum of $110,403. The extent of Rapisardi's physical and consequential injuries was hotly contested at trial and the damages allowed are attacked on appeal as grossly excessive, wrongly computed, and based on improper exclusion of testimony. Dr. Gerald Kara, an ophthalmologist who initially removed the chip from plaintiff's eye and in whose care plaintiff has remained,[6] testified that the injury caused the loss of sight of the left eye resulting in loss of stereoscopic vision; that this condition would be permanent; that the eye would be prone to infection and irritation and that its removal might be required in the future; and that, based on Rapisardi's age, background, and loss of stereopsis, he could not continue to do marine carpentry work. On cross-examination Dr. Kara admitted that he did not know whether stereopsis is necessary for the performance of marine carpentry, or

whether, assuming it not to be required, plaintiff could resume his work. Furthermore, the doctor's report submitted to Barbara and the shipowner prior to trial had only indicated that Rapisardi could not do work requiring stereopsis; it did not say that he could not work as a wood butcher.

Rapisardi appeared as a witness in his own behalf. At the time of trial he was 60 years old. His life expectancy on the date of the accident was 17.3 years and his work expectancy 7.5 years. He told the court that he was unable to return to any work, that his activities were severely restricted, and that he frequently suffered pain. He admitted that he had refused to wear an eye patch even though the wearing of it might lessen the likelihood of infection and irritation. In sum, it was the thrust of his testimony that he was totally unemployable.

The district court, although sitting without a jury, excluded the testimony of a successfully employed one-eyed marine carpenter and refused to entertain the testimony of two others on the ground that they were not of the same age and cultural background as Rapisardi and had different intelligence quotients. Thus the only witness the defense was allowed to present to contradict plaintiff's assertion of unemployability was a recognized rehabilitation expert who testified that persons in circumstances similar to Rapisardi had successfully obtained gainful employment.

The district court accepted Dr. Kara's conclusions without qualification and ruled that Rapisardi was "useless and helpless, if for no other reason than he thinks himself to be," 300 F.Supp. at 946. After determining that plaintiff was unemployable as a marine carpenter, the court stated that "while there may possibly be some other forms of employment which may be available to plaintiff, on the basis of the record in this case, it could only be a matter of the purest con-

---

6. On the day of the accident plaintiff underwent surgery for removal of the chip; he remained in the hospital for 11 days. Five weeks later he was readmitted and a second operation, for the removal of a traumatic cataract, was performed. Plaintiff has continued to require medication for pain.

jecture and speculation as to how much, if anything, plaintiff is capable of earning in the future," *ibid.* Damages in the above-mentioned sum, $110,403, were assessed against the shipowner, which, in turn, as above-stated, was granted indemnity from Barbara in full.[7]

We are puzzled by the district court's treatment of the damages question in general, and of the subsidiary issue of Rapisardi's employability in particular, and for the reasons stated below we remand these questions for further consideration.

■ The district court's refusal to hear the testimony of the three one-eyed marine carpenters seems to have unnecessarily impaired the shipowner's efforts to contradict Rapisardi's claim that he was unable to return to his trade. One cannot deny the value to the shipowner's case of this contradictory testimony from men similarly handicapped who were able to continue their employment, and especially inasmuch as the opposing evidence consisted only of plaintiff's self-serving and subjective testimony and the opinion of an expert qualified in another area of expertise and whose credibility had been seriously eroded on cross-examination. Its admissibility was a close question. "Particularly since this is a non-jury case the federal rules should be liberally applied when doubts arise as to the admissibility of evidence," United States v. E. Regensburg & Sons, 124 F.Supp. 687, 693 (SDNY 1954), aff'd 221 F.2d 336 (2 Cir.), cert. denied, 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751 (1955); and because there is less likelihood that the trier of fact will be confused by irrelevant or immaterial testimony or inflamed by prejudicial remarks, the better course would have been for the court to receive the evidence and give to it such credence and value as it merits, cf. United States v. Werner, 160 F.2d 438 (2 Cir. 1947) (L. Hand); Vaccaro v. Alcoa Steamship Co., 405 F.2d 1133 (2 Cir. 1968).[8]

■■ But even if Rapisardi is unemployable as a marine carpenter the damage award remains faulty in several respects. First, he refused to wear the eye patch prescribed by Dr. Kara. Wearing an eye patch is quite different from submitting to painful surgery of questionable value, and under the circumstances he was obligated to mitigate damages, see, e. g., Quadrino v. S. S. Theron, 436 F.2d 959 (2 Cir. 1970); Young v. American Export Isbrandtsen Lines, Inc., 291 F.Supp. 447 (SDNY 1968); Murphy v. American Barge Line Co., 169 F. 2d 61 (3 Cir.), cert. denied, 355 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406 (1948). We are unable to determine from the court's memorandum that this was considered. Furthermore, there is no indication that the court considered the shipowner's contention that Rapisardi was malingering because he had little to gain by taking employment yielding a smaller income.

■ Earlier in this term we had occasion to discuss the importance of Rule 52(a), Federal Rules of Civil Procedure, with reference to the findings a district court sitting without a jury should spell out concerning awards of damages, Fuchstadt v. United States, 434 F.2d 367 (2 Cir. 1970). There, at 370, we held that:

    * * * in tort actions for damages the pertinent consideration entering into the award as well as the amount allowed for each item should be stated

---

7. The total award is broken down as follows:

| | |
|---|---|
| Pre-judgment loss of income | $ 16,786.00 |
| Post-judgment loss of income, $27,976.00, discounted, 5 per cent | 26,917.00 |
| Past and future pain and suffering | 65,000.00 |
| Medical expenses | 1,700.00 |
| | $110,403.00 |

8. In *Vaccaro*, the district court specifically noted that admission of the excluded evidence would not have altered the result. This approach was similarly employed in *Regensburg*.

briefly and clearly "so that the appellate court can properly appraise the elements which entered into the award * * * Without this information the defendant is unable properly to exercise the appellate rights conferred by statute and the court is equally unable to make appropriate appellate review," Alexander v. Nash-Kelvinator Corp., 261 F.2d 187, 191 (2 Cir.), on rehearing after remand, 271 F.2d 524 (2 Cir. 1959).

Admiralty procedures were made subject to the Federal Rules of Civil Procedure by amendment effective July 1, 1966. Therefore, the circumstance that a case may arise under admiralty jurisdiction does not excuse a failure to comply with Rule 52(a).

█ If on remand Rapisardi is found to be employable, either as a marine carpenter or otherwise, we anticipate that the award for pain and suffering will be reduced by whatever sum the present computation reflects compensation for plaintiff's psychological trauma or for his feelings of inadequacy resulting from his mistaken belief that he is unemployable.

█ Lastly, were we not remanding all the damage issues we would be required to order a remittitur with reference to the allowance for loss of future wages. It is not disputed that Rapisardi, were he to have continued uninterrupted work as a marine carpenter from the date of his injury throughout his work expectancy of 7.5 years, would earn more in the last two years, seven months, of his work expectancy; nor is it contested that in arriving at the present value of those amounts they should be discounted over a longer period than the discountable periods of his earlier expected earnings. Therefore, the discounting should have been done on a year-by-year basis rather than by the use of a 7.5 average wage rate, the basis adopted by the

trial court. See Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 588 n. 3 (2 Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526; 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962).

The case is remanded to the district court, limited to further determination of all issues relative to the award of damages, with instructions to give further consideration to the question of plaintiff's employability, to expand any explanation of the damage award, and to adjust any amounts awarded for loss of future earnings in conformity with the method of computation set forth herein.[9]

---

9. We agree with counsel for Rapisardi that prompt disposition on remand should be urged. Inasmuch as the liability issue has been determined and all that remains is the computation of plaintiff's damages, courts should not unduly extend the length of time which an injured plaintiff must wait before receiving compensation.