**REIMAN CONSTRUCTION COMPANY, a Wyoming Corporation, Appellant (Defendant),**

**Gerald Deines & Associates; Chen & Associates, Inc., a Colorado corporation; and Volk and Harrison, P.C., a Wyoming corporation, (Defendants),**

v.

**JERRY HILLER COMPANY; and Gerald G. Hiller and Betty B. Hiller, d/b/a Jerry Hiller Company, Appellees (Plaintiffs).**

**GERALD DEINES & ASSOCIATES; Volk and Harrison, P.C., a Wyoming corporation, Appellants (Defendants),**

**Reiman Construction Company, a Wyoming corporation; Chen & Associates, Inc., a Colorado corporation, (Defendants),**

v.

**JERRY HILLER COMPANY; and Gerald G. Hiller and Betty B. Hiller, d/b/a Jerry Hiller Company, Appellees (Plaintiffs).**

Nos. 85–39, 85–40.

Supreme Court of Wyoming.

Nov. 25, 1985.

---

Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellant (defendant) Reiman Const. Co.

David A. Scott of Murane & Bostwick, Casper, for appellants (defendants) Gerald Deines & Associates, and Volk & Harrison, P.C.

Warren R. Darrow and Don W. Riske of Riske, Edmonds & Darrow, P.C., Cheyenne, for appellees (plaintiffs) Jerry Hiller Co. and Gerald G. Hiller and Betty B. Hiller, d/b/a Jerry Hiller Co.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal results from an action for damages due to the faulty construction of a commercial building and warehouse near Casper, Wyoming. The owner of the building, appellee Jerry Hiller Company (hereinafter Hiller), filed suit against the soils

engineering firm of Chen & Associates (hereinafter Chen), the architectural firm of appellant Gerald Deines & Associates (hereinafter Deines), the engineering firm of appellant Volk & Harrison, P.C. (hereinafter Volk & Harrison), and the building contractor, appellant Reiman Construction Company (hereinafter Reiman). At the close of Hiller's case, the court dismissed the complaint against Chen and rendered judgment in favor of Hiller, finding Deines, Volk & Harrison, and Reiman negligent and liable to Hiller for the damage caused.

In Case No. 85–39, Reiman appeals from the judgment and raises the following issues:

"1. Will the evidence in this case support a judgment against Reiman Construction Company?

"2. Did the District Court err in refusing to specify its method of computing damages, thereby preventing an effective review?

"3. Did the District Court err in failing to determine specific percentages of negligence?

"4. Did the District Court err in failing to allocate damages among the defendants?"

In Case No. 85–40, appellant Deines and appellant Volk & Harrison together seek review of the judgment and raise the following issues:

"A. The Trial Court committed reversible error in failing to assess negligence against the Appellees.

"B. The Trial Court committed reversible error in failing to assess negligence against Defendant Chen and Associates.

"C. The Trial Court committed reversible error in awarding damages that were excessive."

The appeals were consolidated for argument and opinion. We will reverse the trial court's judgment finding Reiman negligent in Case No. 85–39. In Case No. 85–40, we will affirm the trial court's judgment finding Deines and Volk & Harrison negligent. On the issue of damages, we will remand the case to the district court.

In August 1977, Hiller entered into a contract with the architectural firm of Deines to design an office and warehouse building. Deines subsequently obtained a soils report from Chen and enlisted the engineering services of Volk & Harrison to design the foundation and floor of the building. When all the construction bids were received, Reiman's was the lowest at $604,000, but well above the projected cost of $450,000. Therefore, all bids were rejected, and Hiller, at the suggestion of Deines, retained an outside consulting engineer to modify the building design and thereby reduce the construction cost. After the modification plans were completed, Reiman agreed to construct the building, as modified, for the sum of $542,551.

The Chen soils report was used by both Deines and Volk & Harrison in the original design as well as the subsequent modified design. However, as Reiman points out in its brief, the plans did deviate from the soils report in the following respects:

"(1) Sheet FF of the plans showed that the floor slab was to be tied directly to the foundation, without providing for an expansion joint;

"(2) The roof drain on the north side of the building discharged directly against the side * * *;

"(3) No sloping contour lines were shown on the north side of the building * * *."

Construction on the building was substantially completed in December of 1979, and Hiller moved into the building. Subsequently, in July of 1981, inspection revealed cracks in the building. All witnesses agreed the damage was caused by water infiltrating into the foundation, causing the soil to expand.

In its decision letter, the trial court found:

"1. In August of 1977, plaintiffs and defendant Deines contracted for Deines to design an office and warehouse building for plaintiffs. Deines retained defendant Volk and Harrison as structural engineer. In January of 1979, plaintiffs and defendant Reiman contracted for con-

struction of the building in accordance with plans and specifications prepared by Deines and Volk.

"2. In September of 1977, a soils report was submitted by defendant Chen noting that the underlying soil possessed a high swell potential. Chen recommended that the building be designed to account for this with particular reference to the floor, exterior ground slope, and roof drain discharges. This report was submitted to Deines, made available to Volk, and included in the specifications for the Reiman contract.

"3. The building was not designed and constructed to accommodate the findings and recommendations of the soils report. The design and construction should have allowed for vertical movement of the floor and walls, for roof drains to discharge water a sufficient distance from the foundation, and for adequate exterior ground slope to drain water away from the building.

"4. Defendants had a duty to design and construct the building in accordance with the soils report. The breach of this duty was negligence and below standards in the industry. It was technically feasible to design and construct the building to allow for the soil conditions.

"5. As a result of the negligence of defendants, roof drains discharged water too near the foundation and the drainage slope north of the building was inadequate. Water thus flowed underneath the floor slab, causing the ground to swell. The slab heaved, causing cracks in the floor, walls, and ceiling and relating damages throughout the office portion of the building.

"6. Cracks appeared in the concrete before completion of the building. Plaintiffs occupied the building in December of 1979, with the understanding that the defects had been or would be corrected by Deines and Reiman.

"7. There was no negligence by Chen or plaintiffs or, if they were negligent, it was not a proximate cause of the damages.

"8. There is not such a disproportion of fault among the defendants as to render inequitable an equal distribution among them of their common liability. The injuries sustained by plaintiffs are incapable of any logical, reasonable or practical division. The conduct of defendants each constitutes a legal cause of the injuries. Thus, the defendants are jointly and severally liable.

"9. As a proximate cause of the negligence of defendants, plaintiffs were injured in the amount of $167,200.00, the reasonable cost of repairs determined from comparing the damage estimates received in evidence."

CASE NO. 85–39

As noted earlier, appellant Reiman raises the issue of whether there was sufficient evidence to support a finding of negligence against Reiman. Since we find insufficient evidence to find Reiman negligent, we need not address the other issues raised by Reiman.

As stated above, Reiman constructed the building from the plans and specifications provided by Deines. On January 14, 1980, Reiman was given a certificate of substantial completion which stated, "The Work performed under this Contract has been reviewed and found to be substantially complete." Under § 9.9.1 of the "General Conditions of the Contract for Construction," published by the American Institute of Architects, an architect issues a final certificate of payment after inspecting the construction:

"9.9.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when he finds the Work acceptable under the Contract Documents and the Contract fully performed, he will promptly issue a final Certificate for Payment stating that to the best of his knowledge, information and belief, and on the basis of his observations and inspections, the Work has been completed in accordance

with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor, and noted in said final Certificate is due and payable. * * *"

It is generally recognized that a contractor who follows the building plans and specifications is not liable for the resultant defects in a building due to a faulty design.

" * * * In the absence of special provisions in the contract, the contractor's obligation is ended upon the completion of the structure in accordance with the terms of the contract. Therefore, he is not liable in case the structure is subsequently damaged or is destroyed by some accident or calamity, or falls from some defect or weakness in the structure or fault of the soil, inasmuch as he does not guarantee the sufficiency of the specification, but only the skill with which he performs his work and the soundness of the materials used therein.

\* \* \* \* \* \*

" * * * [T]he rule has become well settled in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans or specifications furnished by the owner, and the architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the owner for loss or damage which results, at least after the work is completed, solely from the defective or insufficient plans or specifications, in the absence of any negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects. * * *" 13 Am.Jur.2d Building and Construction Contracts, §§ 27, 28, pp. 29–30 (1964).

Hiller claims Reiman was negligent by failing to notify Hiller of the soils condition encountered. Such argument is faulty since Hiller's architect, Deines, as well as the engineering firm of Volk & Harrison, had already been apprised of the soils condition from Chen's soils report and had made their plans and specifications accordingly. Therefore, there was no need to

inform Deines and Volk & Harrison of the soils condition when they already knew such from the soils report.

In this case, there is no evidence which shows Reiman did anything but perform all work properly under the design given for the building. Carrel McClain, architect for the Deines firm, testified the building was constructed in accordance with the plans and specifications. To the same effect is the testimony of Michael Apostolos, designer for Deines, who also concluded the building was completed in accordance with the specified design.

In the case of *Gaybis v. Palm*, 201 Md. 78, 92 A.2d 269 (1952), the court held the contractor of a home which was subsequently damaged after construction due to faulty soil could recover for the cost of construction from the owner. The contractor built the home according to the owner's plans and specifications and was absolved of any liability:

" * * * If a building contractor does his work in accordance with the plans and specifications and without negligence, he will not be liable to the owner where the building is subsequently damaged by reason of some defect in the building or some fault of the soil, in the absence of an express warranty that the plans and specifications are sufficient, inasmuch as he does not warrant their sufficiency but only the skill and care with which he performs his work and the soundness of the materials used therein." *Id.*, 93 A.2d at 272.

In *Ridley Investment Company v. Croll*, Del.Super., 192 A.2d 925, 6 A.L.R.3d 1389 (1963), an owner sought recovery from a contractor for damages to a post office building due to substantial settling after installation of the floor. The contractor notified the owner of the soft soil conditions. An outside expert was called in who recommended additional piling be placed beneath the exterior walls. The owner concurred and the contractor followed the expert's recommendations. Shortly thereafter, the expert again recommended that additional piling was needed, but the owner

disagreed and no further piling was added. After installation of the floor, substantial settling occurred in the foundation of the building. Additional expense was required to remedy the settling, and the owner sought to recover this expense from the contractor. The court found the contractor not liable for damages to the building due to defective design:

"The lower court held that defendant was exonerated from liability because the damages resulted from a defect in the plans and specifications prepared by the owner and which were followed by defendant in a workmanlike manner. Plaintiff contends here that the court below failed to distinguish between defects inherent in the plans and specifications and defects extrinsic to such specifications, such as a latent defect in the soil. This argument is untenable, since plans and specifications do not exist in a vacuum; they are made for a particular building at a particular place. The defect in the plans and specifications for the building in question was the failure to make provision for adequate pilings and other support for the floor; the fact that these plans and specifications might provide for an adequate building in some other place does not render the plans and specifications less defective for the location in question." *Id.*, at 926–927.

See also the annotation at 6 A.L.R.3d 1394 (1966), and the cases cited therein.

■ We are in accord with the principles cited above. A contractor who constructs a building in substantial compliance with the plans and specifications in a workmanlike manner is not liable for damage caused due to defects in such plans. In this case, we find there was insufficient evidence upon which to find Reiman negligent for failing to follow the design plans. Therefore, the judgment rendered against Reiman is reversed.

## CASE NO. 85-40

As set forth above, appellant Deines and appellant Volk & Harrison ask whether the trial court erred in failing to assess any negligence against Hiller as well as Chen. We will consider these issues together. Appellants do not claim the court erred in rendering judgment against them. Appellants also raise the issue of damages, which we will consider later in this opinion.

■ As noted earlier, Chen's role in the transaction was to prepare a soils report for Deines. The soils report stated: "Subsoil conditions across the site were erratic." We think there was sufficient evidence presented at trial for the court to find no negligence attributable to Chen. There was expert testimony presented which indicated the soils report was correct and adequately apprised appellants of the soil conditions.

Chen had no duty to specify exactly how adjustment to the erratic soil conditions should be correlated; that was the job of the architect and structural engineer. The evidence showed the technical data presented in Chen's soils report would enable adequate design of the building.

The court dismissed Hiller's complaint against Chen and granted judgment in its favor. Therefore, the court committed no error by failing to assess any negligence against Chen. See, e.g., *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981).

■ The same holds true for Hiller. Appellants claim Hiller was negligent by failing to mitigate the damages. We recognize the well-established principle that one who is injured by the wrongful act of another has a duty to exercise reasonable care and diligence to avoid or minimize the damage caused. *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984); and *Shidler v. Clayton Oil Company*, Wyo., 502 P.2d 987 (1972). However, before mitigation is allowed, there must be a showing of "a reasonable estimate of how much the damages could have been lessened." *Banner v. Town of Dayton*, Wyo., 474 P.2d 300, 308 (1970).

Appellants assert that Hiller was negligent by failing to take proper steps to minimize the damages caused. However, evidence presented at trial showed that Hil-

ler contacted the appellants numerous times concerning problems with the building and improper drainage around the building.

■ Appellants also allege that Hiller was negligent in its failure to follow the soils report recommendations when the landscaping was done. It should be noted that the landscaper was not made a party to the action so it is difficult at best to find Hiller liable for the landscaper's alleged negligence, if any. Gerald Hiller testified that the soils report recommendations regarding landscaping were never discussed with him so he was not aware of them. We find the trial court was correct in concluding there was no showing of any negligence attributable to Hiller.

Accordingly, we affirm the judgment with respect to appellant Deines and appellant Volk & Harrison.

## DAMAGES

The appellants in both appeals have raised the issue of damages. After receiving damage estimates ranging from $95,000 to $527,000, the court awarded Hiller damages in the amount of $167,200. In its decision letter, quoted above, the court found this amount "the reasonable cost of repairs determined from comparing the damage estimates received in evidence." Subsequent thereto, appellant Reiman filed a motion seeking itemization of the damage computation determined by the court. Such motion was denied, the court stating in its decision letter:

" * * * The Court selected from those estimates the repair costs which appeared to be the most reasonable and having the greatest support in the evi-

dence. It would not be possible for me to go back and reconstruct that process now."

■ It is the rule in this state that damages must be susceptible of ascertainment with a reasonable degree of certainty. *Cates v. Barb,* Wyo., 650 P.2d 1159 (1982); and *Wheatland Irrigation District v. McGuire,* Wyo., 562 P.2d 287 (1977). In *Douglas Reservoirs Water Users Association v. Cross,* Wyo., 569 P.2d 1280, 1284 (1977), we said:

"* * * [W]hile damages may not be calculable with absolute certainty, they should be susceptible of ascertainment with a reasonable degree of certainty and if there is evidence from which a reasonable estimate of money damages may be made that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited to that purpose. * * *"

However, a court may not speculate or conjecture in awarding damages. *Krist v. Aetna Casualty & Surety,* Wyo., 667 P.2d 665 (1983); and *Chrysler Corporation v. Todorovich,* Wyo., 580 P.2d 1123 (1978).

■ Before any evidence was received in the present case, counsel for Deines, and Volk & Harrison filed a request that the court make findings of fact and conclusions of law pursuant to Rule 52, Wyoming Rules of Civil Procedure, which contemplates special findings of fact and conclusions of law.[1] Pursuant to such request, the district court should have set forth its method of computation used in determining damages, given the facts and circumstances attendant upon this case. As appellant Reiman points out, Hiller may be getting a superior building with features not in the

---

1. Rule 52, W.R.C.P., reads in part:

"(a) Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties requests it before the introduction of any evidence, with the view of exception to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its

conclusions of law; provided, that without such request the court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, the same may be considered on appeal. Request for findings are not necessary for purposes of review. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

original building resulting in unjust enrichment, but it is impossible to make such a determination since the court's method of determining the damages is not before us. In the absence of such blueprint, even minimal attempts of elucubration are all for naught.

The United States Supreme Court stated in *Hatahley v. United States*, 351 U.S 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065, 1074 (1956), "[I]t is necessary in any case that the findings of damages be made with sufficient particularity so that they may be reviewed." Without such information, a defendant is unable to properly exercise his appellate rights conferred by statute and the court is equally unable to conduct proper appellate review. *Fuchstadt v. United States*, 434 F.2d 367 (2nd Cir.1970). See also *Rapisardi v. United Fruit Company*, 441 F.2d 1308 (2nd Cir.1971); and *Neill v. Diamond M. Drilling Co.*, 426 F.2d 487 (5th Cir.1970). Accordingly, the case is remanded to the district court for a rehearing on the issue of damages.

The district court's judgment finding Reiman negligent is reversed; the judgment finding Deines as well as Volk & Harrison negligent is affirmed; and the case is remanded to the district court for a rehearing on the issue of damages.

ROONEY, Justice, concurring.

I agree with that said in the majority opinion. The result is affirmance of the finding by the trial court of "no negligence by Chen or plaintiffs or, if they were negligent, it was not a proximate cause of the damages," and a determination that negligence was not established on the part of Reiman. Liability is left with Deines and with Volk & Harrison.

Reiman need no longer be concerned, but one of the issues it presented on appeal in Case No. 85–39 was whether or not the court erred in failing to determine specific percentages of negligence. I believe this should have been done, and that it should be done on remand insofar as Deines on the one hand and Volk & Harrison on the other hand are concerned.

In my dissenting opinion in *Kirby Building Systems v. Mineral Explorations Company*, Wyo., 704 P.2d 1266 (1985), I pointed out the inconsistency and inequity resulting from the Comparative Negligence Statute, § 1–1–109, W.S.1977, and the Contribution Among Joint Tortfeasors Act, §§ 1–1–110 through 1–1–113, W.S.1977. Aside from that, the contribution among joint tortfeasors is according to their relative degrees of fault. In this case, after Hiller recovers damages from Deines or from Volk & Harrison, or from both, the two tortfeasors will have a problem with contribution unless the trial court determines their specific degrees of negligence. I would direct the trial court to do so.