**Donald M. CLINE, Appellant (Defendant),**

v.

**Thomas SAWYER and Loeva Sawyer, Appellees (Plaintiffs).**

**No. 5100.**

Supreme Court of Wyoming.

Sept. 24, 1979.

Stuart S. Healy of Kennedy, Connor & Healy, Sheridan, for appellant.

Bruce P. Badley and Harlan W. Rasmussen of Badley, Rasmussen, Shoumaker & Newton, Sheridan, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-defendant and appellees-plaintiffs entered into an oral contract whereby appellant was to perform plumbing work for appellees in connection with the installation of sewer and water lines in a trailer court being constructed by appellees in Sheridan. Appellees contended that the work was defective and that they were thereby damaged in the amount of $20,930.63.[1] After a trial to the court, judgment was entered in the amount of $8,400.60 in favor of appellees.

---

1. The complaint alleged damages in the amount of $21,225.06, but the amount was reduced to $20,930.63 on motion of appellant at the close of its case "to conform to the proof." The $8,400.60 judgment reflected an offset of $540.63 allowed appellant for uncompensated labor performed by him.

In his appeal from such judgment, appellant alleges error: (1) in denial of appellant's motion to dismiss the complaint (converted to a motion for summary judgment) for a defect in parties in that appellant and his wife were made parties defendant instead of Cline Plumbing and Heating, the corporate entity which carried on the plumbing business [2]; (2) in denial of appellant's motion for a change of judge based on an affidavit of prejudice; (3) for failure to enter findings of fact and conclusions of law on specified issues as requested by appellant; and (4) in that the findings of fact and judgment of the court were not supported by the evidence.

We agree with appellant's third contention in that the findings of fact and conclusions of law were inadequate and we remand the case for revision or supplementation thereof. We address the first two contentions of appellant inasmuch as a holding favorable to appellant thereon would require a reversal rather than a remand of the case, but we affirm the trial court in these respects. The remand makes it unnecessary for us to consider the fourth contention of appellant.

## CORPORATION AS A PARTY

The only affidavit, deposition or other verified material before the court at the time of its ruling on this issue was an affidavit of appellee Thomas Sawyer in which he stated that appellant had held himself out as an individual doing business as Cline Plumbing and Heating "without any reference to a corporation" at all times during the "dealings" between them. The contract between the parties was not in writing. The corporate name of appellant's business did not include the word "company" or the word "incorporated" or an abbreviation of either of these words. Appellant was the legally required master plumber for the business.

2. The complaint was dismissed as to appellant's wife as a result of the motion.

3. Rule 40.1(b)(2) reads:

As indicated ante, there is a question as to whether this case was tried as a contract case or as a negligence case, or both.

The rule for tort liability is stated:
"Of course, the individual by whom the tortious act is committed cannot himself escape liability on the ground that he was acting for the corporation. Such individual and the corporation are jointly liable and may be joined as defendants." 19 Am.Jur.2d, Corporations § 1427, p. 823.

The rule for contract liability is stated: "One who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he fails to disclose his agency and the identity of his principal, regardless of whether or not he was authorized as agent to execute the contract. In such case, the agent is subject to all the liabilities, express or implied, created by the contract, in the same manner as if he were the principal in interest. If the agent would avoid personal liability, the duty is on him to disclose his principal; it is not upon the party with whom the agent deals to discover the principal. * * *" 3 Am.Jur.2d, Agency § 317, pp. 674–675.
"* * * [I]t is the agent's duty to disclose his capacity as agent of a corporation if he is to escape personal liability for contracts made by him." *American Rent All, Inc. v. Culotta*, La.App., 328 So.2d 743, 744 (1976). See *Carlesimo v. Schwebel*, 87 Cal.App.2d 482, 197 P.2d 167 (1948); and 19 C.J.S. Corporations § 840.

■ The record does not contain evidence that appellees knew, or should have known, that they were entering into an agreement with appellant other than in his individual capacity. The trial court properly denied appellant's motion in this respect.

## CHANGE OF JUDGE

Appellant filed a motion pursuant to Rule 40.1(b)(2), W.R.C.P. [3] for a change of judge

"(2) Disqualification for Cause.—After the time for filing a motion for peremptory disqualification of the presiding judge has expired, any party may move for a change of

on the grounds that the presiding judge was "biased against" appellant and "in favor of" appellees. Appellant's affidavit filed in support of the motion set forth the following as the reason for his belief "that he cannot receive a fair and impartial trial":

"* * * [I]t has recently come to my attention that the presiding Judge, his Honor Leonard McEwan, and the Plaintiff, in this matter, Thomas Sawyer, have been close personal friends throughout the greater part of their lives; that they attended the University of Wyoming together and were closely associated at the University, and that they may have belonged to the same fraternities and associations; and that his Honor and the said Thomas Sawyer have had and continue to have close political affiliations and social relationships in the Sheridan community."

Appellant's attorney filed an affidavit that a motion for a peremptory challenge under Rule 40.1(b)(1), W.R.C.P.[4] was not timely filed [5] inasmuch as the information contained in appellant's affidavit had only recently become known to him.

The motion was set for hearing; and while the record does not reflect it, counsel for the parties advised at oral argument that a hearing was held. An order was not entered, but another judge was not called in to try the action.

■ The affidavit of appellant in support of the motion does not state "sufficient facts to show the existence" of bias or prejudice against appellant. The affidavit alleges that the judge and appellee Thomas Sawyer attended the same university at the same time where "they *may* have" belonged to the same fraternities or associations. Certainly such does not reflect a prejudgment of this case by the judge. It does not reflect a leaning of his mind in favor of appellees to the extent that it will sway his judgment or to the extent that he would make his decisions in the matter other than on the evidence placed before him. The affidavit further alleges that the judge and appellee Thomas Sawyer "have been close personal friends throughout the greater part of their lives * * * and * * * have had and continue to have close political affiliations and social relationships in the Sheridan community." Again, a prejudgment of the case is not indicated by these relationships, and they do not indicate such inclination toward appellees by the judge as would render him unable to exercise his judicial functions impartially.

■ The words "bias" and "prejudice" are not synonymous. One cannot be preju-

---

district judge on the ground that the presiding judge (A) has been engaged as counsel in the action prior to his election or appointment as judge, (B) is interested in the action, (C) is related by consanguinity to a party, (D) is a material witness in the action, or (E) is biased or prejudiced against the party or his counsel. The motion shall be supported by an affidavit or affidavits of any person or persons, stating sufficient facts to show the existence of such ground, together with an affidavit of the party's attorney showing that the facts stated were unknown to him and to the party and could not have been discovered by the exercise of reasonable diligence prior to the expiration of the time for filing a motion for peremptory disqualification. Prior to a hearing on the motion any party may file counter-affidavits. The presiding judge shall rule on the motion and if he grants the same shall immediately call in another district judge to try the action."

**4.** Rule 40.1(b)(1) reads:

"(1) Peremptory Disqualification.—A party may peremptorily disqualify a district judge by filing a motion requesting a change of judge. The motion must be filed at least fifteen (15) days before the date set for the hearing on any motion or application filed pursuant to Rule 12, 42, 56, 65, 71.1, or 72.1, or if there be no such motion hearing set, then at least fifteen (15) days before the date set for pretrial, and if there be no pretrial set, then at least fifteen (15) days before the date set for trial, or if the date is set within fifteen (15) days after the order of setting, within five (5) days after receipt of such order; provided, however, that no more than one (1) such motion shall be filed by the parties plaintiff or parties defendant. After the filing of such motion, the presiding judge shall forthwith call in another district judge to try the action."

**5.** At the time, a pretrial conference had been set and undertaken, and the matter was set for trial.

diced against another without being biased against him, but he can be biased without being prejudiced. Prejudice involves a prejudgment or forming of an opinion without sufficient knowledge or examination. Bias is a leaning of the mind or an inclination toward one person over another. The "bias" which is a ground for disqualification of a judge must be personal, and it must be such a condition of the mind which sways judgment and renders the judge unable to exercise his functions impartially in a given case or which is inconsistent with a state of mind fully open to the conviction which evidence might produce. See *Littrell v. State*, 22 Okl.Cr.App. 1, 209 P. 184 (1921); *Valdez v. Glenn*, 79 Wyo. 53, 330 P.2d 309 (1958), reh. den. 79 Wyo. 53, 332 P.2d 1119 (1958); *People v. Bonnerwith*, 69 Misc.2d 516, 330 N.Y.S.2d 248 (1972); *Evans v. Superior Court in and for Los Angeles County*, 107 Cal.App. 372, 290 P. 662 (1930); *Commonwealth Tobacco Co. v. Alliance Ins. Co.*, 238 Mass. 514, 131 N.E. 213 (1921); *Mitchell v. State*, 36 Tex.Cr.App. 278, 36 S.W. 456 (1896); *Temples v. Central of Georgia Ry. Co.*, 15 Ga.App. 115, 82 S.E. 777 (1914); *Rowe v. State*, 15 Ga.App. 660, 84 S.E. 132 (1915); *United States v. Irwin*, (10th Cir.), 561 F.2d 198 (1977).

A judge would not be very effective or efficient in a community the size of Sheridan[6], if he were bound to recuse himself from cases involving those with whom he had "close political affiliations and social relationships" or with whom he had been "a close personal friend throughout a greater part of" his life. There is no more of a disposition for a judge to rule in favor of an acquaintance or friend because of that fact than there is a disposition for him to rule against an acquaintance or friend because of that fact. The fact of friendship could result in a "leaning over backwards" to maintain impartiality, or it could result in the opposite. But an allegation of friendship, without more, is not sufficient to establish that either is likely to happen.

In response to a contention that the judge should be disqualified because of a close personal relationship with an associate of the defendant, the court said in *Firnhaber v. Sensenbrenner*, U.S.D.C. Wis., 385 F.Supp. 406, 412 (1974):

"* * * If this were the appropriate standard for determining when recusal is necessary, either very few cases could be heard by the federal judiciary, or federal judges would be rendered hermits upon their appointment. * * *"

See *Plechner v. Widener College, Inc.* (3rd Cir.), 569 F.2d 1250 (1977); and *Hirschkop v. Virginia State Bar Ass'n*, U.S.D.C. Va., 406 F.Supp. 721 (1975).

■ Without a valid reason for recusal, a judge has a duty not to recuse himself. "Recusal and reassignment is not a matter to be lightly undertaken by a district judge. While, in proper cases, we have a duty to recuse ourselves, in cases such as the one before us, we have concomitant obligation *not* to recuse ourselves; absent a valid reason for recusal, there remains what has sometimes been termed a 'duty to sit'. [Citations.]" *Simonson v. General Motors Corporation*, U.S.D.C. Pa., 425 F.Supp. 574, 578 (1976).

The trial court properly denied appellant's motion in this respect.

## PROPRIETY OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Toward the end of his opening statement, appellant made a request for specific findings of fact and conclusions of law with reference to the matter here on appeal as follows:

"* * * [Y]our Honor, we would ask somewhat by way of conclusion on this that the Court enter specific findings of fact and conclusions of law in accordance with Section 1–1–109(b) of the Wyoming Statutes on comparative negligence and Rule 52(a) of the Wyoming Rules of Civil Procedure with respect to the comparative negligence issue and with respect to the * * *.

* * * * * *

---

6. The 1970 population of the city of Sheridan was 10,856.

"* * * prior knowledge of the adverse ground water conditions of the area in terms of what we will assert was negligence on the part of the defendant. I would like the Court to address the question of the degree of care exhibited by the plaintiff—I did say defendant earlier, but I meant plaintiff—commencing and continuing through the construction operation absent the technical input and project certification of an engineer, we would like some finding concerning the absence of that expertise, the technical input—* * *.

* * * * * *

"* * * we would ask the Court to consider the causal effects of plaintiff's damages resulting from the continuation of the plumbing aspects of his construction project from the fall of 1975 through the spring of '76 in view of repeated notices from the Department of Environmental Quality staff personnel that his plans were inadequate for the task. Finally, your Honor, we would like a finding concerning whether and to what extent the plaintiff contributed to his damages with respect to such things as the reject material, the impervious fill material recommended by the defendant, the choice of saddle fittings as opposed to the in-line fittings or 'Y' fittings recommended by the defendant and with respect to what will be termed 'sweat fittings' on the water pipes, choosing to solder water pipe connections instead of to fit them with the fittings that were recommended by the defendant * * ."

A request for findings under Rule 52(a), W.R.C.P.[7] are not in the nature of a request for answers to special interrogatories directed to the court. The request is only for findings which are sufficient to indicate the basis or steps taken for the decision "upon the contested matters" (see Rules Committee note of 1946).

"* * * Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others; the nature of the evidentiary findings sufficient and appropriate to support the court's decision as to fairness or unfairness is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion." *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943), reh. den. 320 U.S. 214, 63 S.Ct. 1444, 87 L.Ed. 1851 (1943).

█ A request under § 1-1-109(b), W.S. 1977[8] is for the finding as directed by the statute, i. e., "the amount of damages and the percentage of negligence attributable to each party." The request and the finding

---

7. The pertinent portion of Rule 52(a) reads: "* * * Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its conclusions of law; * * *."

8. Section 1-1-109 reads: "(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.
"(b) The court may, and when requested by any party shall:
"(i) If a jury trial, direct the jury to find separate special verdicts;
"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;
"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

are to be made only in connection with actions "to recover damages for negligence resulting in death or in injury to person or property." The necessity for the finding is thus mandated in this type of action.

The court made the following findings of fact and conclusions of law in this case:

## "FINDINGS OF FACT

"1. That Thomas Sawyer and Donald Cline entered into an oral agreement whereby Tom Sawyer would provide materials and Donald Cline, doing business as Cline Plumbing, a licensed plumber of the City of Sheridan, would supply labor necessary for the installation of water and sewer utilities in the construction of a mobile home park known as Wong Village in Sheridan, Wyoming.

"2. That Donald Cline did, in fact, install water and sewage utility lines on real property leased by Plaintiffs and was paid a total sum of $28,267.85. That portions of the sewage system failed to pass city inspection on the basis of water seeping into the sewage lines constructed by Donald Cline and under his supervision.

"3. That Donald Cline and workmen under his supervision and control wrongfully connected a waterline to a sewage line which necessitated re-excavating the connection site and tapping into a proper waterline.

"4. That as a result of the improper installation and faulty workmanship performed by Donald Cline or workmen under his supervision and control, Thomas Sawyer incurred the sum of $8,941.23 in payments to other contractors for corrective work to the water and sewage systems in Wong Village of Sheridan, Wyoming.

"5. Defendant performed $540.63 worth of labor for the benefit of Plaintiffs and has not been compensated for the same.

## "CONCLUSIONS OF LAW

"1. Defendant failed to properly install portions of the sewage and water systems in Wong Village, Sheridan County, Wyo-

ming, and, thereby failed to perform his contractual obligations, and that such failure to perform the work in an ordinary workmanlike manner is breach of contract and negligence in performing the duties established under the construction contract.

"2. That the Defendant is liable unto the Plaintiffs for the sum of $8,941.23.

"3. That the Defendant is entitled to an offset in the sum of $540.63."

■ If this is only a contract action, it may be said that these findings of fact and conclusions of law are sufficient. They reflect the existence of a contract, performance by appellees, its breach, and the resulting damages. As only a contract action, the findings required by § 1–1–109(b) would not be necessary. The same cannot be said if this is also a negligence action.

The complaint sounds in contract, but the answer sets forth defenses to a negligence action. The question is often determined at a pretrial conference since one of the purposes of such conference is to formulate and simplify the issues. Rule 16, W.R.C.P.; *Rhoads v. Gilliland*, Wyo., 514 P.2d 202 (1973). In this case, a pretrial conference was scheduled; and it at least started. There was no pretrial conference order, and the trial court commented at the inception of the trial that the conference was "aborted." However, on several occasions during the trial, the parties and the court referred to the pretrial conference in determining the propriety of exhibits and use of witnesses. In their pretrial conference memoranda both parties referred to negligence as an issue in the case. Appellant referred to it as such in his opening statement. Testimony pertinent to negligence on the part of appellant was received, i. e., relative to connection of a water line to a sewer line, the installation of improper "saddle" connections instead of "in-line Y" connections, and whether or not such was attributable to appellant. Testimony pertinent to negligence on the part of appellees was received, i. e., improper engineering, designation of the fittings to be used by appellant, and designation and insistence on use of improp-

er fill material. On the entire record, both parties seem to accept negligence as one of the theories of the case. In its conclusion of law number one, the trial court found appellant's actions to be a "breach of contract *and negligence* in performing the duties established under the construction contract" (emphasis supplied). Thus, it can be said that the trial was conducted on the theory of negligence as well as that of contract.

■ This is not improper. In construction contracts, there is an implied warranty that the work will be performed in a skillful, careful, diligent and workmanlike manner. Where negligence on the part of the contractor results in a breach of this warranty, a cause of action ex contractu and a tortious action premised on negligence, or both, are available to the contractee. *Ferguson v. Town Pump, Inc.*, Mont., 580 P.2d 915 (1978); *Gilley v. Farmer*, 207 Kan. 536, 485 P.2d 1284 (1971); *McFeeters v. Renollet*, 210 Kan. 158, 500 P.2d 47 (1972); *National Fire Insurance Company of Hartford v. Westgate Construction Co.*, U.S.D.C. Del., 227 F.Supp. 835 (1964); *Tavares v. Horstman*, Wyo., 542 P.2d 1275 (1975); *New Trends, Inc. v. Stafford-Lowdon Co.*, Tex. Civ.App., 537 S.W.2d 778 (1976); 1 C.J.S. Actions § 47, pp. 1104, 1105; 17A C.J.S. Contracts §§ 494(2)b and 525(1); 65 C.J.S. Negligence § 4(6); 17 Am.Jur.2d, Contracts § 371. See *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo., 526 P.2d 52 (1974).

■ Although it is sometimes said that contributory negligence will not preclude recovery in construction contract cases premised on breach of this warranty, but will be considered in fixing the amount of damages, 17 Am.Jur.2d, Contracts § 371, p. 815, consideration of such in Wyoming is rendered moot by the enactment of § 1–1–109 relative to comparative negligence.[9] It requires the apportionment of damages on the basis of fault unless the contributory negligence was as great as the negligence of the person against whom damages are sought. Assumption of risk is a form of contributory negligence in Wyoming. *Ford Motor Company v. Arguello*, Wyo., 382 P.2d 886 (1963); *Sanders v. Pitner*, Wyo., 508 P.2d 602 (1973).

■ Inasmuch as the negligence action had for its purpose the recovery of damages for injury to the property of appellees, i. e., to their water and sewer line, and inasmuch as contributory negligence was an issue, the trial court was obligated by the provisions of § 1–1–109 to make "special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party." This was not done, and we must remand for this purpose.

The case should be treated as having been presented on the theory of contract and on the theory of negligence, with findings to be made on each. The findings which were made may be sufficient for the contract theory, and they may even be construed to indirectly cover the elements of negligence. But they do not apportion the percentage of negligence. The trial court may have had in mind an apportionment which would not allow any recovery by appellees on the negligence theory or which would not allow a recovery on the negligence theory in excess of that for which judgment was given. However, under § 1–1–109, the apportionment must be subject of a "special finding."

Affirmed in part, and remanded for revision and/or supplementation of the findings of fact and conclusions of law in accordance with the requirements of this opinion and for judgment in conformity therewith.

9. See footnote 8.