2007 WY 19

**Randy FARMER, d/b/a Randy Farmer Construction, a sole proprietorship, Appellant (Defendant),**

v.

**Edwin R. RICKARD and Elizabeth A. Rickard, Trustees under the Elizabeth A. Rickard Living Trust, Appellees (Plaintiffs).**

No. 06–132.

Supreme Court of Wyoming.

Jan. 31, 2007.

Representing Appellant: Jay A. Gilbertz and Michael K. Davis of Yonkee & Toner, LLP, Sheridan, Wyoming. Argument by Mr. Gilbertz.

Representing Appellees: Laurence W. Stinson and Bradley D. Bonner of Bonner Stinson P.C., Powell, Wyoming. Argument by Mr. Stinson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Appellant, Randy Farmer, dba Randy Farmer Construction, a sole proprietorship (Farmer), seeks review of an appealable order of the district court awarding Appellees, Edwin and Elizabeth Rickard, Trustees under the Elizabeth A. Rickard Living Trust (Rickards), damages in the amount of $220,000.00. Farmer built a home and detached garage/bus barn near Cody, for the Rickards. Before trial, the district court granted the Rickards' motion for a partial summary judgment which had the effect of assigning Farmer the duty to guarantee the adequacy of the Rickards' house plan for the soil conditions present on a lot they purchased from a third party, prior to entering into their construction contract with Farmer. As a result, the trial phase of this case addressed only the issue of damages. We will reverse and remand because the contract between Farmer and the Rickards is unambiguous that Farmer did not specifically agree to be responsible for subsurface soil conditions at the work site, and his duty to the Rickards with respect to soil conditions, if any, cannot rest upon their written contract. However, the Rickards' complaint and the defenses interposed by Farmer preclude summary judgment because they have generated genuine issues of material fact that must be sorted out by the fact finder.

## ISSUES

[¶ 2]   Farmer raises these issues:

1.   Did the trial court err in denying Farmer summary judgment and in granting a partial summary judgment for the Rickards establishing a duty on the part of Farmer to guarantee the adequacy of the blueprints chosen by the Rickards for unknown soil conditions on a lot selected by the Rickards?

2.   Did the trial court err in extending its partial summary judgment to strike Farmer's defense that the Rickards breached the implied covenant of good faith and fair dealing which was based on the fact that the Rickards had been warned about the soil conditions on their lot and withheld these warnings from Farmer?

3.   Should this case be reversed with instructions to the trial court to grant summary judgment to Farmer?

The Rickards' statement of the issues is similar enough to that provided by Farmer that we need not set it out in detail here.

## FACTS AND PROCEEDINGS

[¶ 3]   In July of 1999, the Rickards purchased the land upon which the home in dispute in this case was built. Farmer was not a party to that transaction. In a "Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land)," dated July 17, 1999, the Rickards agreed to buy 5.23 acres of unimproved land near Cody. The purchase price was $35,000. The contract provided the Rickards the right to have any inspections performed on or before August 3, 1999. In an addendum to the real estate contract, the parties to that contract agreed:

Exhibit A noted as additional provisions in that purchase offer dated July 17, 1999 by and between Edwin Ray Rickard and Elizabeth Ann Rickard as buyers, and Tableworks Inc. as seller.

1.   This offer is contingent upon the buyers['] approval of a soil stability test to be performed on the subject property within the inspection period stated previously in the offer. Any and all costs for said testing shall be paid for by buyer.

2.   This offer is contingent upon the buyers['] approval of a percolation test to be performed on the subject [property]. [Buyers reserve] the right to approve, or disapprove said test results at buyers['] sole discretion. Should buyer[s] disapprove of said testing as noted for soil stability or percolation, buyer[s] may terminate this offer to purchase and have all earnest monies returned in a timely manner.

[¶ 4]   The Rickards wanted to have soil testing done because they anticipated the need for a septic system for their home, i.e., the soil needed to percolate. In addition, the Rickards were informed by the seller that there was the potential for bentonite (expansive clay soil) in the soil, in the general area of their proposed home. The Rickards had

an expert, Fred Kunz, check the soil for bentonite. He dug four test holes and said the soil "looked fine to me," based on visual observation of the soil. An offer of proof made by Farmer established that such soils often cannot be ascertained solely by visual inspection.

[¶ 5] Next, the Rickards picked out a house plan from a book provided to them by a contractor other than Farmer. Mr. Rickard approached Farmer at a construction site near the Rickards' lot and asked him if he would like to bid on constructing their home. Farmer and two other contractors submitted bids based on a drawing of the proposed house, which included a statement of the materials required for the project (the house plans were not obtained until later). The Rickards conceded that at the time they contracted with Farmer, they were not concerned about soil problems and Mr. Rickard never discussed potential soil problems with him. It was only after Farmer had begun excavation for the foundation of the home that Mr. Rickard broached the subject "because the hole was so much deeper than what Fred's original backhoe would go...." Mr. Rickard asked Farmer if the soil looked "okay" to him and Framer replied, "It looks fine to me." In an offer of proof placed on the record, Farmer asserted that at that time he specifically told Mr. Rickard that soil testing could be done but it might cause delay, and Rickard declined to have any testing done. Mr. Rickard agreed that when he was negotiating with Farmer, he was not concerned about soils or soil testing because he had already been assured that the soil on his lot was not problematic. Mr. Rickard never discussed Fred Kunz's soil testing results with Farmer.

[¶ 6] The rather informal contract that Farmer and the Rickards entered into on September 2, 1999, was this:

## CONTRACTOR AGREEMENT

This Agreement made the 2nd day of September 1999 by and between Randy Farmer dba Randy Farmer Construction, hereinafter called the Contractor and Ed and Betsy Rickard, hereinafter called the Owner.

Witnesseth, that the Contractor and the Owner for the consideration named agree as follows:

1. The Contractor shall furnish all of the materials and perform all of the work to build home according to plans and specifications agreed to by Contractor and Owner.

2. The work to be performed under this Contract shall begin at or near September 3, 1999 and end approximately March 15, 2000.

3. The Owner shall pay the Contractor for the material and labor performed under the Contract in monthly installments as billed for work completed. Payments of the Contract Price shall be paid monthly by the tenth day of the month as requested by Contractor. Any extras or additions will be brought to Owners attention and agreed upon before said work is begun. Said extras or additions will be billed in addition to Contract price.

4. Agreements between Contractor and Owner are as follows:

Contractor to provide:

· Excavation of hole, water, electric, and gas trenches and rough grading.

· Concrete as specified on plan including footings, crawl space, garage changed to finished basement, and added basement storage room.

· Framing, finish work, painting, shingles, siding, metal facia and soffit, gutter, masonry wainscoat on walkout basement, two gas fireplaces, plumbing, electrical, windows and skylights as shown on plans.

Owner to provide:

· Electricity and conduit, water, and gas hook ups to house.

Allowances:

· Flooring $11,000.00

· Light Fixtures and Doorknobs $2,400.00

· Cabinets and Tops $7,000.00

Total price including allowances $186,000.00

The record on appeal does not reflect which of the parties is the scrivener of this contract, and that may or may not be of importance to the eventual resolution of this case.

[¶ 7]   The Rickards provided Farmer with a set of building plans that they had purchased from L.M. Bruinier & Associates, Inc., Designers A.I.S.D., 1304 SW Bertha Blvd., Portland, Oregon 97219 (Plan No. 9600).   On each page of those plans the following information was displayed:

These plans are limited to one construction only by the purchaser.  The reuse, or reproduction, by any means of these plans, ideas, designs or drafted works, without the express permission from L.M. Bruinier & Assoc.  Inc, an Oregon Corporation, is strictly prohibited by law under the FEDERAL COPYRIGHT ACT TITLE XVII. WRITTEN DIMENSIONS ON THESE DRAWINGS SHALL HAVE PRECEDENCE OVER SCALED DIMENSIONS; CONTRACTORS SHALL VERIFY, AND BE RESPONSIBLE FOR ALL DIMENSIONS AND CONDITIONS ON THE JOB AND THIS OFFICE MUST BE NOTIFIED OF ANY VARIATIONS FROM THE DIMENSIONS AND CONDITIONS SHOWN BY THESE DRAWINGS.

In the briefs, the house plans are referred to as blueprints, and the source of those house plans is occasionally referred to as an architect.   However, from the papers included in the record on appeal, the house plans do not appear to be "blueprints," and there is nothing on the face of the house plans to suggest that the source was an "architect."

[¶ 8]   In an "Order Denying Defendant's Motion for Summary Judgment" entered on January 4, 2006, the district court made the following determinations:

1.   The Court recognizes some difficulty with the initial breach of contract case which resulted in subsequent amendments to the Complaint filed by Plaintiffs.  The Court finds that such amendments are not abnormal in complex litigation.

2.   The Court has reviewed the cases cited by counsel and finds that the law contained within them is not inconsistent and that both a negligent [sic] cause of action and breach of contract cause of action exist under the circumstances of this case.

3.   The Court [is] persuaded that the plans and blueprints are among the contract documents and the conditions contained therein impose an express warranty and condition on the builder to handle soil conditions on the site.

4.   The Court finds express warranty and express duty in the contract for the contractor to be responsible for conditions on the job.

5.   The Court further finds that there are issues of material fact, with regard to the negligence action, as to whether Defendant knew, or should have known, about soil conditions in the area and questions the material fact with regard to the weight of soil tests by Mr. Kunz.

6.   The Court further finds that based on *Cline v. Sawyer*, 600 P.2d 725 (Wyo. 1979), *Reiman Constr. Co. v. Jerry Hiller Co.*, 709 P.2d 1271 (Wyo.1985) and *Alpine Climate Control, Inc. v. DJ's, Inc.*, 78 P.3d 685, 689 (Wyo.2003), the contractor has [an] implied duty to deal with soils on site under the circumstances of this case.

7.   The Court further finds that with regard to the holding in *Reiman*, the Wyoming Supreme Court did not intend to apply that circumstance to every single case and the circumstances in this case are different than those set forth in *Reiman*

. . . .

[¶ 9]   The conclusion of that order was that Farmer's motion for summary judgment was denied.   However, as the time for trial neared, there was some confusion as to the effect of that order.   After considerable discussion at the pretrial conference, the district court determined that it would grant a partial summary judgment in favor of the Rickards (although the Rickards had not filed a motion for summary judgment at any point in the proceedings) and the trial would be concerned only with the issue of damages. That order contained the following determinations:

1.   Wyoming Rule of Civil Procedure 56(c) and 56(d) allows a trial court to enter

a partial order of summary judgment if there is no genuine dispute regarding certain material facts and a party is entitled to judgment on those issues as a matter of law.

2. Duty is a matter of law.

3. The Contractor's Agreement incorporates by reference the blueprints delivered by Plaintiffs to Defendant. Together these documents create a contract between the Plaintiff and the Defendant, which contract obligates the Defendant to build a house for Plaintiffs.

4. The Court finds that the language in the contract between the parties is clear and unambiguous.

5. The Court previously found that the plans and blueprints are among the contract documents and the conditions contained therein impose an express warranty and condition on the builder to handle soil conditions on the site.

6. The Court previously found an express warranty and express duty in the contract for the contractor to be responsible for conditions on the job.

7. Soil conditions and soil issues relative to construction of the structures constitute a condition of the job.

8. It is undisputed that the Plaintiffs' home and bus barn are suffering structural distress as a result of the movement (including expansion and contraction) of expansive soils on site and located in and around the foundation footprint of the home and bus barn.

9. No genuine issue of material fact exists with regard to the Court's determination of the legal duties, and Plaintiffs are entitled to summary judgment thereon.

10. At the pretrial conference, defense counsel admitted that if the Court was determining, as a matter of law, that Defendant was responsible for the soil conditions on the site, that the Defendant did not have a defense to the "breach" element as the Defendant had not built the structures to account for the expansive soils conditions at the site. However, Defense counsel expressly denied that this was the correct construction of the contract, and denied that there had been a breach of any implied contractual duty or any implied warranty.

11. Therefore, the Court finds that the Defendant has admitted a breach of the express warranty and contractual duty to identify the soil conditions that have been established by this Court's ruling as set forth above.

[¶ 10] Later still in the proceedings, the district court refused to allow Farmer to admit any testimony that supported his contention that Mr. Rickard violated the implied contract term that the Rickards would act with good faith and fair dealing. This theory of Farmer's was based upon the circumstance that Rickard never informed Farmer of the warning he received about expansive soils or of the testing he had done. Farmer contends that this amounted to a second grant of a partial summary judgment in favor of the Rickards.

## STANDARD OF REVIEW

[¶ 11] When we review a summary judgment, we have before us the same materials as did the district court, and we follow the same standards which applied to the proceedings below. The propriety of granting a motion for summary judgment depends upon the correctness of the dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. We, of course, examine the record from a vantage point most favorable to the party who opposed the motion, affording to that party the benefit of all favorable inferences that fairly may be drawn from the record. Questions of law are reviewed de novo. *Lawrence v. State Farm Fire and Cas. Co.*, 2006 WY 56, ¶ 11, 133 P.3d 976, 979–80 (Wyo.2006)

## DISCUSSION

**District Court's Construction of the Contract**

[¶ 12] The district court concluded that the contract between the parties

unambiguously contained an express provision assigning a duty to Farmer to take account of the soil in which the Rickards' house was to be built. The governing rules of contract construction are these:

> In contract litigation, when the terms of the agreement are unambiguous, the interpretation is a question of law.... *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996); *Union Pacific Resources Co. v. Texaco, Inc.,* 882 P.2d 212, 218–19 (Wyo.1994). Whether a contract is ambiguous is a question of law for the reviewing court. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo. 1993). We review questions of law de novo without affording deference to the decision of the district court. *Hermreck v. United Parcel Service, Inc.,* 938 P.2d 863, 866 (Wyo.1997); *Griess v. Office of the Atty. Gen., Div. of Criminal Investigation,* 932 P.2d 734, 736 (Wyo.1997).

> According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.,* 882 P.2d at 220; *Prudential Preferred Properties,* 859 P.2d at 1271. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.,* 929 P.2d 535, 539 (Wyo.1996); *Prudential Preferred Properties,* 859 P.2d at 1271.

*Roney v. B.B.C. Corp.,* 2004 WY 113, ¶ 10, 98 P.3d 196, 200 (Wyo.2004) (citing *Amoco Prod. Co. v. EM Nominee Partnership Co.,* 2 P.3d 534, 540 (Wyo.2000)); and see *Castleberry v. Phelan,* 2004 WY 151, ¶¶ 11–12, 101 P.3d 460, 463–64 (Wyo.2004).

[¶ 13] While we agree with the district court that the contract is not ambiguous, we conclude that the contract itself, as well as the language from the house plans about "conditions," is silent as to the matter of who will be responsible for whether soil testing is necessary. This is too important a responsibility/duty to be inferred from silence and/or the use of the word "conditions." Moreover, the language from the house plans clearly suggests that it relates to the "conditions shown by these drawings." The drawings do not purport to account for soil conditions, whatever they might happen to be where the plans are utilized.

[¶ 14] In *Reiman Const. Co. v. Jerry Hiller Co.,* 709 P.2d 1271, 1275–76 (Wyo.1985), we considered a case wherein the building team included a soils engineer, an architect, a civil engineering firm, as well as a builder. In that case we said:

> It is generally recognized that a contractor who follows the building plans and specifications is not liable for the resultant defects in a building due to a faulty design.
>
> " \* \* \* In the absence of special provisions in the contract, the contractor's obligation is ended upon the completion of the structure in accordance with the terms of the contract. Therefore, he is not liable in case the structure is subsequently damaged or is destroyed by some accident or calamity, or falls from some defect or weakness in the structure *or fault of the soil,* inasmuch as he does not guarantee the sufficiency of the specification, but only the skill with which he performs his work and the soundness of the materials used therein.
>
>     \* \* \*
>
> " \* \* \* [T]he rule has become well settled in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans or specifications furnished by the owner, and the architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the owner for loss or damage which results, at least after the work is completed, solely from the defective or insufficient plans or specifications, in the absence of any negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects. \* \* \*" 13 Am.Jur.2d

Building and Construction Contracts, §§ 27, 28, pp. 29–30 (1964).

Hiller claims Reiman was negligent *by failing to notify Hiller of the soils condition encountered.* Such argument is faulty since Hiller's architect, Deines, as well as the engineering firm of Volk & Harrison, *had already been apprised of the soils condition from Chen's soils report and had made their plans and specifications accordingly.* Therefore, there was no need to inform Deines and Volk & Harrison of the soils condition when they already knew such from the soils report.

In this case, there is no evidence which shows Reiman did anything but perform all work properly under the design given for the building. Carrel McClain, architect for the Deines firm, testified the building was constructed in accordance with the plans and specifications. To the same effect is the testimony of Michael Apostolos, designer for Deines, who also concluded the building was completed in accordance with the specified design.

In the case of *Gaybis v. Palm,* 201 Md. 78, 92 [93] A.2d 269 (1952), the court held the contractor of a home which was subsequently damaged after construction due to faulty soil could recover for the cost of construction from the owner. The contractor built the home according to the owner's plans and specifications and was absolved of any liability:

"* * * If a building contractor does his work in accordance with the plans and specifications and without negligence, he will not be liable to the owner where the building is subsequently damaged by reason of some defect in the building *or some fault of the soil,* in the absence of an express warranty that the plans and specifications are sufficient, inasmuch as he does not warrant their sufficiency but only the skill and care with which he performs his work and the soundness of the materials used therein." *Id.,* 93 A.2d at 272.

In *Ridley Investment Company v. Croll,* Del.Super., 192 A.2d 925, 6 A.L.R.3d 1389 (1963), an owner sought recovery from a contractor for damages to a post office building due to substantial settling after installation of the floor. The contractor notified the owner of the soft soil conditions. An outside expert was called in who recommended additional piling be placed beneath the exterior walls. The owner concurred and the contractor followed the expert's recommendations. Shortly thereafter, the expert again recommended that additional piling was needed, but the owner disagreed and no further piling was added. After installation of the floor, substantial settling occurred in the foundation of the building. Additional expense was required to remedy the settling, and the owner sought to recover this expense from the contractor. The court found the contractor not liable for damages to the building due to defective design:

"The lower court held that defendant was exonerated from liability because the damages resulted from a defect in the plans and specifications prepared by the owner and which were followed by defendant in a workmanlike manner. Plaintiff contends here that the court below failed to distinguish between defects inherent in the plans and specifications and defects extrinsic to such specifications, *such as a latent defect in the soil.* This argument is untenable, since plans and specifications do not exist in a vacuum; they are made for a particular building at a particular place. The defect in the plans and specifications for the building in question was the failure to make provision for adequate pilings and other support for the floor; the fact that these plans and specifications might provide for an adequate building in some other place does not render the plans and specifications less defective for the location in question." *Id.,* at 926–927.

See also the annotation at 6 A.L.R.3d 1394 (1966), and the cases cited therein. [Emphases added.]

[¶ 15] The district court deemed the *Reiman* case not applicable to the circumstances of this case. We, however, conclude that it must be a part of the discussion even though it may not be dispositive of the issue presented here. An important factor in *Reiman* is

most certainly the fact that the architect and the engineers knew they were dealing with soil problems when they assembled the plan that Reiman constructed.

[¶ 16] In an annotation devoted to this particular subject, it is stated that "a contractor who knows, or should know, of a defect in a particular subsoil does not perform his contractual obligations in a workmanlike manner if he fails to notify the owner of the existence of the condition." Annotation, *Duty of Contractor to Warn Owner of Defects in Subsurface Conditions,* 73 A.L.R.3d 1213 (1976 and Supp.2006). That annotation goes on to suggest that:

"... [T]he courts frequently distinguished between latent soil conditions and apparent defects in the soil, absolving the contractor from blame for the consequences of the former, but holding him responsible for failing to notify the property owner of the later. Counsel representing property owner in such cases should not discount the importance of expert testimony in establishing whether a soil condition is one that should be apparent to the builder, and thus one of which the builder has a duty to inform the householder."

73 A.L.R.3d at 1216–17.

[¶ 17] The prevailing law appears to be different in those circumstances where a home is purchased from a builder-vendor (one who builds houses on lands he owns). Mark S. Dennison, *Builder–Vendor's Liability to Purchaser of New Dwelling for Breach of Implied Warranty of Fitness or Habitability,* 50 POF3d 543, § 13 (Defects in building site) (1999 and Supp.2006). In a nutshell, a builder-vendor may be liable for soil conditions under the theory of an implied warranty of fitness and/or habitability.

[¶ 18] On a similar note, a legal encyclopedia states this as the prevailing law:

A contractor or builder who has complied with the requirements of a construction contract normally is not responsible for defects caused by the nature of the soil or the action of the elements. Moreover, in the absence of a statute or contractual provision to the contrary, a contractor who agrees to follow plans and specifications is not required to examine the soil for hidden subterranean conditions therein which may affect its suitability for the purpose intended or to perform such an examination to determine whether all parts of the structure will be watertight if the contractor follows the plans and specifications. Furthermore, a builder is not responsible where, by the fault of the owner, he or she is unable to overcome defects in the soil.

17B C.J.S. *Contracts* § 592(d) at 289 (1999).

[¶ 19] Of course, because of the disposition below, inadequate fact gathering and no fact finding has been done in this regard. What we do know is that the seller of the lot, which was designed to be used for residential purposes, knew of the potential of unfavorable soil conditions and warned the Rickards of them. We know that Mr. Rickard sought an opinion on the condition of the soil. That opinion was given without benefit of a written agreement, was not in a written form, and Rickard was not required to pay for it. Rickard claims that he asked Farmer about the condition of the soil, and Farmer agrees with that claim, but counters that his suggestion that more formal soil testing be done was disregarded by the Rickards. In sum, we conclude there are genuine issues of material fact that preclude summary judgment at this juncture.

## CONCLUSION

[¶ 20] The appealable order, as well as the partial summary judgment in favor of the Rickards, are reversed, and this matter is remanded to the district court for further proceedings consistent with this opinion.